LOCAL FEDERAL SAVINGS & LOAN ASS'N v. HARRIS et al.

No. 29104. Dec. 3, 1940.

*107 P. 2d 1012.*

Everest, McKenzie & Gibbens, of Oklahoma City, for plaintiff in error.

Thompson & Braly, of Ada, for defendants in error.

CORN, J. This appeal involves the validity of a second mortgage taken by a building and loan association for the difference between a Home Owners' Loan Corporation loan and the full amount of the mortgage indebtedness in the refinancing of a mortgage on the home of a distressed home owner under the provisions of the federal statutes creating the Home Owners' Loan Corporation and and defining its powers.

The action originated in the district court of Pontotoc county as an action by the Home Owners' Loan Corporation, hereinafter referred to as the HOLC, against G. C. Harris and Effie J. Harris, his wife, hereinafter referred to as defendants. The Local Building & Loan Association (now the Local Federal Savings & Loan Association) was made a party defendant. The HOLC sought foreclosure of a mortgage upon certain real property located in the city of Ada, Okla., which mortgage was given to secure a promissory note in the sum of $2,200. The Local Federal Savings & Loan Association filed its answer and cross-petition wherein it sought to foreclose a second mortgage upon the same property given to secure a note of $260.94. Thereafter the HOLC dismissed its petition, leaving for adjudication only the issues between the Local Federal Savings & Loan Association, hereinafter referred to as plaintiff, as against G. C. Harris and Effie J. Harris.

It appears that prior to May 15, 1934, defendants were indebted to plaintiff upon a promissory note secured by a mortgage upon the property herein involved. Defendants sought to obtain a loan from the HOLC for the purpose of paying off and discharging the indebtedness to plaintiff. The property was appraised at $2,750, and under the regulations governing HOLC loans the maximum amount that could be loaned on said property was $2,200. The total amount of indebtedness due plaintiff was $2,460.94. It appears that the plaintiff agreed to take a second mortgage from defendants for $260.94, the difference between the indebtedness and the amount to be procured from the HOLC loan, upon the real property herein involved, and notified the officials of the HOLC that arrangements had been made with Mr. Harris for payment of the difference between the proceeds of the loan and the

amount due the plaintiff company. Said company signed and delivered to HOLC its agreement to take bonds, which instrument is, in part, as follows:

"Mortgagee's Consent to Take Bonds "To Home Owner's Loan Corporation:

"The undersigned is the holder of a *first* mortgage or other obligation, which constitutes a lien or claim on the title to the home of G. C. Harris located at 943 E. 7th St., Ada, Oklahoma, in the sum of $1,800.00.

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $1,993.52, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $50 cash as provided in said act, and thereupon to release all claim of the undersigned against said property."

Thereafter the loan was closed and the bonds were delivered to plaintiff company. As heretofore stated, the sole question presented is whether or not the second mortgage is valid and enforceable. It is plaintiff's contention that the case of Finley & Lollar v. Dean, 184 Okla. 456, 88 P. 2d 366, which involves a state of facts similar to the facts involved herein, is determinative and decisive of the question here presented. An examination of that case discloses, however, that the only question decided by the court was whether or not the agreement to accept the amount received from the loan procured from the HOLC in settlement of the full amount of the pre-existing indebtedness, which was a larger sum, constituted an accord and satisfaction of the entire indebtedness. It was therein pointed out that the question of accord and satisfaction was not involved for the reason that there was a promise to pay the entire indebtedness. In the instant case the question briefed and presented is whether or not the second mort-

gage herein involved is invalid and unenforceable as being in contravention of the policy and spirit of the federal statutes creating the HOLC and defining its powers and duties. (48 Stat. 128, 12 U. S. C. A. 1461, et seq.).

Although the question is new in this jurisdiction, there is no lack of authority on this point. In 110 A. L. R. 250, appears the following note:

"Agreements between a mortgagor and mortgagee looking to a reimbursement of the latter for any loss suffered by reason of a refinancing of an indebtedness under the Home Owners' Loan Act are held invalid as a violation of the spirit and purpose of that act. Cook v. Donner (Kan.) (reported herewith) ante, 244; Stager v. Junker (1936) 14 N. J. Mis. R. 913, 188 A. 440; Jessewich v. Aboene (1935) 154 Misc. 768, 277 N. Y. S. 599; First Citizens Bank & T. Co. v. Speaker (1936) 159 Misc. 427, 287 N. Y. S. 831."

In the case of Cook v. Donner, 145 Kan. 674, 66 P. 2d 587, 110 A. L. R. 244, it was held:

"Where a mortgagee at the same time or after he executes to the Home Owners' Loan Corporation a release of all his claims against his debtor, and receives a less amount in bonds from the corporation making the loan to the debtor, agrees secretly or otherwise with the debtor that the debtor will give him a note and second mortgage on the property to cover the loss he has sustained in making the release, such agreement is in violation of the spirit of the act and rules under which the release was made, it denotes bad faith, is against public policy, and the note and mortgage so given are null and void."

The question was before the Supreme Court of California in the case of McAllister v. Drapeau (Cal.) 92 P. 2d 911, wherein a set of facts similar to the facts involved herein was presented and wherein it was held that such a second mortgage was void. We quote from the body of the opinion as follows:

"It is obvious, from a reading of the statute and the rules and regulations above quoted, that the main and controlling purpose of the act was to assist

small home owners who, because of the then existing financial conditions, faced loss of their homes through inability to meet the charges due on mortgages on their home property. It is to be noted that the act places no compulsion, direct or indirect, on the creditor. The creditor had complete liberty of action. If he refused to accept the offer of the H.O.L.C. as to the amount of bonds and cash it would advance to refund the debt, there was nothing the H.O.L.C. or the debtor could do about it. It was contemplated, however, that many creditors would, and experience under the act proved that many did, accept a reduction in the amount of the existing loan in order to secure liquid assets such as bonds of the H.O.L.C. rather than foreclose on the property and have to hold it until conditions in the real estate market improved. The act provides that such reduction should be passed on to the home owner, the debtor. The rules and regulations contemplated that under some circumstances it would be to the interest of the home owner to give a second mortgage to the creditor to secure a part of the refunded debt, but such rules and regulations provided that the H.O.L.C. would not refund the first mortgage if the creditor demanded a second unless the financial ability of the debtor and the financial arrangements were such that the debtor would have a reasonable opportunity to pay off both mortgages. *Obviously, before these facts could be ascertained, a full disclosure of the amount and the terms of the proposed second lien would have to be made to the H.O.L.C. The securing of a second lien by the creditor without such disclosure is clearly in violation of the letter and spirit of the statute and regulations.* This is demonstrated not only by the terms of the statute and the regulations, but also by the language of the agreement above quoted that all creditors were required to sign wherein the creditor represented and agreed that he was accepting the bonds 'in full settlement of the claim of the undersigned.' "

All these authorities were reviewed by the Ohio court in the case of Dayton Mortgage & Investment Company v. Theis, 62 Ohio App. 169, wherein it was held:

"Where a mortgagee agrees to accept bonds of the Home Owners' Loan Corporation in part settlement of the mortgage debt, and where full disclosures are made, and in the absence of fraud, secrecy, duress and collusion, the mortgagor may contract with the mortgagee to take care of the difference between the total amount due and the face value of the bonds, subject only to the limitations of the Home Owners' Loan Act.

"Where the administrators of the Home Owners' Loan Corporation are not advised of such independent contract and the mortgagee has agreed to accept the bonds in full settlement of his claim, such contract is thereby rendered void as against public policy."

See, also, Chaves County Building & Loan Ass'n v. Hodges (N.M.) 59 P. 2d 671.

Plaintiff argues that under the rules and regulations of the HOLC it was authorized under certain conditions to permit second mortgages and that the mortgage herein involved was within such authority and was not violative of any rule, regulation, or statutory provision. We find it unnecessary to discuss this feature for the reason that under all these authorities, in order to give validity to such second mortgage, a full disclosure of the nature and terms and conditions surrounding the second mortgage must be made to the HOLC. The finding of the trial court in the instant case includes the finding that such a disclosure was not made. Plaintiff argues that such a finding is not sustained by the evidence and in this connection relies upon two letters, one dated April 24, 1934, addressed to John Paul McKinley, the loan-closer of the HOLC at Ada, Okla., stating that "We * * * expect to arrange with Mr. Harris very shortly for the difference between the proceeds of the loan you are to make and the amount due us." There was another letter dated April 28, 1934, addressed to the same party in which it was said that "We have arranged with Mr. Harris for any difference between the proceeds of your loan and the amount due us." We cannot agree with plaintiff that these letters constituted any notice whatever to the HOLC of the intent of the parties to place a second mortgage on the premises. Neither are

we impressed with the argument that these letters constitute a sufficient notice to put the HOLC upon inquiry, which inquiry, if pursued, would have disclosed that a second mortgage was being placed on the premises involved herein. An examination of the entire record discloses that the findings of the trial court are amply sustained by the evidence. Under the authorities to which we have referred, the mortgage herein involved is invalid and unenforceable, and the trial court did not err in so holding.

The judgment is affirmed.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and NEFF, J., absent. DAVISON, J., not participating.