LOCAL FEDERAL SAVINGS & LOAN ASS'N v. SHEETS et ux.

No. 30419. Sept. 29, 1942.

Rehearing Denied Nov. 17, 1942.

*130 P. 2d 825.*

Everest, McKenzie & Gibbens, of Oklahoma City, for plaintiff in error.

Carmon C. Harris and Frank W. Jones, both of Oklahoma City, for defendants in error.

DAVISON, J. This is an action to cancel a second mortgage on real estate and to recover money previously paid in partial satisfaction of the debt secured by the mortgage. It was instituted in the district court of Oklahoma county by R. B. Sheets and Letha Mary Sheets, husband and wife, against the Local Federal Savings & Loan Association of Oklahoma City, on the 6th day of April, 1940.

Issues were framed by appropriate pleadings in which the defendant not only sought to defeat plaintiffs' action but also in a cross-petition sought to foreclose its mortgage. The cause was tried to the court without the intervention of a jury. Judgment was rendered on February 14, 1941, canceling the second mortgage and awarding a recovery of the money previously paid in partial satisfaction of the mortgage debt.

The defendant savings and loan association has appealed, appearing herein as plaintiff in error. The order of appearance in this court is thus reversed; however, our continued reference to the parties will be by their trial court designation.

The second mortgage herein involved was connected with a transaction in which a former mortgage had been refinanced by the Home Owners' Loan Corporation (hereinafter referred to as the HOLC). The second mortgage was taken by the original mortgagee.

The trial court concluded that the second mortgage was invalid upon consideration of the rule announced by this court in Local Federal Savings & Loan Association of Oklahoma City v. Harris, 188 Okla. 214, 107 P. 2d 1012. We therein said in the syllabus:

"Where the Home Owners' Loan Corporation refunded mortgage indebtedness without knowledge that the creditor was taking from the debtor a second mortgage for the difference between the

proceeds of the loan and the amount of the debt refunded, such second mortgage is invalid and unenforceable."

In presenting this case on appeal the defendant first asserts:

"If the note and mortgage security held by plaintiff in error in which it sought to foreclose in its cross-petition was not taken in violation of the Act of Congress creating the Home Owners' Loan Corporation, it was entitled to a judgment against defendants in error and to a decree foreclosing its mortgage."

In connection with this proposition defendant first takes the position that the second mortgage herein involved did not violate the rule of the HOLC, nor defeat the spirit and purpose of the act. The facts which present this proposition are:

In July of 1932, Letha Mary Elkins married R. B. Sheets. At the time of her marriage she was the owner of the real estate involved in this action. She had previously (on July 22, 1930) executed a mortgage to the defendant corporation, which mortgage, or rather the debt secured thereby, was delinquent at the time of her marriage. Mr. Sheets was not aware of the delinquency at the time, but found out about it sometime in 1933. In the latter part of 1933 they made application for a loan to the HOLC to be closed January 31, 1934. At that time the amount due the defendant corporation was $2,715.21. After some investigation of the matter on the part of the HOLC the latter declined to make the loan.

Subsequently, beginning in March of 1934, negotiations were renewed. It was then known to the parties to this litigation that the approval of the property as made by the HOLC and the requirements of the latter corporation with reference to the property, together with the expense of making a loan, were such that the proceeds of the contemplated loan would be insufficient to meet the full amount of the mortgage debt due the defendant corporation. In order to satisfy this deficiency it was agreed between the parties that the deficiency or difference would be taken care of by means of a second mortgage on the premises. Thereafter negotiations were carried forward with the HOLC and the loan consummated. The proceeds of the loan in the aggregate sum of $2,401.26, mostly in bonds ($2,375), were delivered to the defendant corporation, which released its then existing mortgage. The note and mortgage to the HOLC were executed on July 13, 1934. Thereafter, on July 23, 1934, Mr. and Mrs. Sheets executed to the defendant association their note for $363.94 and second mortgage securing the same. Later the note was succeeded by another note for $400 secured in the same manner.

The question of knowledge on the part of the HOLC of the contemplated and subsequently executed second mortgage is the subject of some discussion in the briefs.

An examination of the record on this point discloses that the HOLC was advised that arrangements were made between the mortgagors and the defendant corporation "for any difference there may be in the proceeds of the loan and the amount due" the defendant corporation. However, the record does not disclose that the HOLC was advised that a second mortgage loan on the premises was the means agreed upon. If such an arrangement can be assumed to have been intimated by the correspondence, it is certain that the details of the arrangement were not submitted for approval.

The notification to the HOLC in this respect was therefore almost identical with that involved in Local Federal Savings & Loan Association v. Harris et ux., supra, wherein as we noted in the body of the opinion:

". . . It appears that the plaintiff agreed to take a second mortgage from defendants for $260.94, the difference between the indebtedness and the amount to be procured from the HOLC loan, upon the real property herein involved, and notified the officials of the HOLC that arrangements had been made with Mr. Harris for payment of the difference between the proceeds of

the loan and the amount due the plaintiff company. . . ."

And at a later point in the opinion we said, respecting this feature of the case, that:

". . . in order to give validity to such second mortgage a full disclosure of the nature and terms and conditions surrounding the second mortgage must be made to the HOLC . . ."

No such full disclosure was made in the case at bar. We deem it unnecessary at this point to supplement or reiterate the reason for this holding as set forth in our former opinion and in the authorities therein reviewed. It follows that our former decision governs our decision on this point and supports the trial court's holding that the second mortgage now before us is invalid.

It is next contended by the defendant that:

"If the note and mortgage security held by the plaintiff in error on which it sought foreclosure in its cross-petition was taken and held in violation of the Act of Congress creating the Home Owners' Loan Corporation, and for that reason was illegal and void, the defendants in error were and are in pari delicto with plaintiff in error, and no court will grant either party any relief therefrom."

As a general rule it is correct to say that a court will not grant to either party relief when the right to relief is founded upon an illegal transaction, but the rule is not without its exceptions and limitations. One of these exceptions is, when public policy demands the granting of relief, the same will be afforded regardless of the illegality of the transaction with which it is connected. Thus, in 12 Am. Jur. at page 729, it is said:

"Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal agreements, and the rule is adopted, not for the benefit of parties, but of the public. It is evident, therefore, that cases may arise even under agreements of this character in which the public interests will be better promoted by granting than by denying relief, and in such cases the general rule must yield to this policy. Hence, even between parties in pari delicto, relief will sometimes be granted if public policy demands it. The general rule operates only in cases where the refusal of the courts to aid either party frustrates the object of the transaction and takes away the temptation to engage in agreements contra bonos mores or in violation of the policy of the law. If it is necessary, in order to discountenance such transactions, to enforce such an agreement at law or to relieve against it in equity, it will be done, though both the parties are in pari delicto. The party is not allowed to allege his own turpitude, in such cases, when he is the defendant at law; nor is he prevented from alleging it when he is the plaintiff in equity, if the refusal to execute the agreement at law or the refusal to relieve against it in equity would give effect to the original purpose and encourage the parties engaging in such transactions. In such cases the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public, the guilty party to whom relief is granted being only the instrument by which the public is served. . . ."

Illustrative of the limitations upon the general rule is the case of Falkenberg v. Allen, 18 Okla. 210, 90 P. 415, 10 L.R.A. (N.S.) 494. Recovery was therein permitted by one who, with the design of winning a' bet on a "fixed race," placed his money in the hands of a stakeholder, not knowing that the race was in fact arranged so that he was a victim. Under the facts in that case we in substance held that public policy was best served by permitting recovery.

Here we are dealing with a law intended to afford relief through a goverment agency to home owners in distress because of delinquent mortgages. It was the purpose of that law to refinance mortgage indebtedness in such a manner that property owners might with some assurance of success undertake the burden of payment. As a part of this policy it was contemplated that excessive incumbrances might be prevented by the lending authority insofar as the former mortgagee was concerned.

The spirit and purpose of the law was,

as we have previously found, violated in this case.

If we leave the parties where we found them by declining to grant relief because it was in this case sought by the mortgagor, we leave the property with a cloud upon its title and reward the mortgagee to the extent it has secured part payment of the mortgage debt. We would thus assist in defeating or partially defeating our national public policy as promulgated in legislation creating the HOLC. It is more important from a judicial standpoint that this court should assist in carrying out and preserving the public policy than that it abstain from dealing with a transaction tainted with illegality. In this type of case the public is best served by awarding such relief as may be appropriate unless we find some other reason for denying in part the relief requested.

This brings us to the defendant association's next contention, which is:

"All payments made by the defendant in error to the plaintiff in error upon said note and mortgage security held by the plaintiff in error were voluntarily made without mistake of facts or duress."

Regardless of the rules which ordinarily obtain relating to recovery of money paid under a mistake of fact or a mistake of law, the question in this case is so closely associated with the question of public policy that the two cannot be isolated. Respecting situations of this character the rule announced in 12 Am. Jur. 735 is applicable. It is therein said:

"Where the law that creates the illegality in the transaction was designed for the coercion of one party and the protection of the other or where the one party is the principal offender and the other criminal only from a constrained acquiescence in the illegal conduct, in such cases there is no parity of delictum at all between the parties, and the one protected by the law or acting under compulsion may, at any time, resort to the law to recover money paid, though the illegal transaction is completed. . . ."

See, also, 40 Am. Jur. 861.

As applied to the case at bar, the illegality of the transaction arose out of a public policy defined and created by congressional act, designed for the protection of mortgagors. Thus, by the governing rule, recovery should be permitted. This consideration no doubt governed the Michigan court in Meek v. Wilson, 283 Mich. 679, 278 N. W. 731, a case which involved the validity of a second mortgage taken by the original mortgagee in connection with a HOLC loan. Therein the court held the mortgagee accountable to the mortgagor for payments made under the second mortgage.

Upon consideration of that case and the general rule above quoted, we are of the opinion, and hold, that the trial court did not err in decreeing a return of the payments made.

The judgment of the trial court is affirmed.

OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. WELCH, C. J., CORN, V. C. J., and RILEY, J., absent.