No. 35,932

ELSIE MAE MURPHY, *Appellee,* v. THE PLAINS STATE BANK, *Appellant.*

(142 P. 2d 733)

Opinion filed November 6, 1943.

*G. L. Light,* of Liberal, argued the cause, and *Auburn G. Light,* of Liberal, was on the briefs for the appellant.

*A. M. Downer,* of Dodge City, argued the cause, and *George R. Gould,* of Dodge City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to have a deed to certain real property held to be void, and for further relief. The trial court heard the evidence and made findings of fact and conclusions of law and rendered judgment for plaintiff. Defendant has appealed.

The pertinent facts disclosed by the pleadings and exhibits and found by the court may be summarized or quoted as follows: In May, 1932, plaintiff was the owner of a described quarter section of land in Meade county upon which there was a first mortgage to a life insurance company for $2,250. She was indebted, also, to the Plains State Bank (hereinafter called the bank) in the sum of $1,720 and to William P. Elliott, the cashier and managing officer of the bank, in the sum of $100, and to secure this indebtedness she executed to the bank a second mortgage upon her land. By November, 1934, payments were delinquent upon both of the mortgages and there were some past due unpaid taxes on the land. Plaintiff, at the suggestion of the bank, applied to the Federal Land Bank of Wichita, which was acting as agent for the Land Bank Commissioner, hereinafter called Federal Land Bank, for a loan sufficient in amount to retire all liens upon the land. The Federal Land Bank agreed to make the loan in the sum of $3,100 on condi-

tion that all liens against the security be fully satisfied. After the payment of the first mortgage and taxes this sum would leave not to exceed $500 to apply upon the bank's second mortgage. On November 19, 1934, there was due the bank on its second mortgage $2,150.48. On that date the plaintiff and her husband, as parties of the first part, executed a contract with the bank which recited that in consideration of $1,650.50, the receipt of which was acknowledged, the parties of the first part would sell and agree to convey to the second party plaintiff's land, which was described, subject to a first mortgage of $3,100 the first parties were putting on the land, to the Federal Land Bank. The first parties agreed to give immediate possession of the land, "and all allotment payments and rents hereafter paid are to go to second parties." Apparently the Federal Land Bank had been advised some time prior thereto that the bank's second mortgage on plaintiff's land was only $500, for on that date, November 19, 1934, the Federal Land Bank wrote the bank:

"You hold a Note & Mtg. as an obligation of Elsie Mae Murphy for $500.00. Will you kindly state below the earliest date said indebtedness can be paid, giving the amount which you will accept in full satisfaction of the same. . . ."

The bank replied to this communication on January 11, 1935, stating:

"The balance of the indebtedness referred to above is $500.00 as unpaid principal and $ none unpaid interest up to the 1" day of February, 1935, upon which date or after which date said debt can be paid. . . ."

and that the debt was secured by a mortgage described by the book and page of its record.

"Upon payment to the undersigned of $500.00 . . . said sum will be accepted in full satisfaction of this claim. . . . The undersigned creditor *further agrees, and,* for the purpose of assisting the above named applicant in obtaining a loan from The Federal Land Bank and/or the Land Bank Commissioner, *hereby represents* to The Federal Land Bank and/or the Land Bank Commissioner *that, directly or indirectly, no note, mortgage or other consideration or evidence of indebtedness has been or will be received from the debtor, incident to such acceptance or payment* as hereinbefore provided, if made, other than the consideration paid by The Federal Land Bank and/or the Land Bank Commissioner; *that no present agreement between the creditor and the applicant, or any other person, for the giving of any such note, mortgage or other consideration or evidence of indebtedness exists; that when said consideration is paid, all claims of this creditor against the above named debtor will have been satisfied in full* and that no person, firm or corporation, other

than the undersigned, is the owner of any interest in said indebtedness."
(Italics ours.)

The instrument contained further statements pertaining to the closing up of the loan and the surrender and cancellation of the instruments evidencing the indebtedness of plaintiff to the bank. This instrument was consented to in writing by the plaintiff.

The plaintiff and her husband executed the mortgage to the Federal Land Bank and the loan was closed in accordance with the instrument previously quoted from. The Federal Land Bank was given no information with respect to the contract of November 19 between plaintiff and her husband and the bank. In closing the loan the bank did not send to the Federal Land Bank the $100 note claimed to be owned individually by Elliott and which was secured by the bank's second mortgage. The Federal Land Bank wrote and inquired about that and the bank reported that the note had been delivered to plaintiff. In fact, the bank or Elliott had induced or required plaintiff to give it a new note for $115 for the one delivered to her, and this fact was concealed from the Federal Land Bank.

Plaintiff continued to reside upon the land, collected the income and profits therefrom, made payments due to the Federal Land Bank on its mortgage, and payment of taxes for the first half of 1936 and prior years. By April, 1938, payments were delinquent upon the mortgage to the Federal Land Bank and through C. C. Wilson, secretary and treasurer of the Meade County Farm Loan Association, the Federal Land Bank was demanding payment. Its mortgage was subject to foreclosure. A few days prior to April 29, 1938, Mr. Elliott, on behalf of the bank, requested plaintiff to execute a deed in compliance with the contract between plaintiff and her husband and the bank of November 19, 1934, on the bank giving to plaintiff an exclusive option to purchase the property within a stated time. Plaintiff talked about the matter with Mr. Wilson, who rewrote the option and plaintiff and her husband did execute a deed to the bank for the stated consideration of $1,980, and received from the bank an exclusive option to purchase the property on or before August 1, 1940, by the payment of $2,085 with interest at six percent from date. The consideration named in the deed, computed and inserted by the bank, was the $1,650.50 mentioned in the contract of November 19, 1934, with six percent interest thereon from that date to the execution of the deed. The additional amount making up the $2,085 mentioned in the contract represents the amount

computed to be due on the $100 note originally owed to W. P. Elliott. This action was to set aside the deed last mentioned.

Among other things the trial court found that plaintiff received no consideration for the deed or for the contract of November 19, 1934, other than the cancellation of the indebtedness on the second mortgage to the bank above the $500 which the bank received from the proceeds of the loan made by the Federal Land Bank.

The court's conclusions of law were:

"(1) The Contract of November 19th, 1934, was without consideration and against public policy and is therefore void. (2) There was no consideration for the deed executed April 29th, 1938. (3) Judgment should be for the plaintiff canceling and setting aside said deed."

While several sections of the federal statute have some application to the question before us, perhaps the most pertinent is 12 U. S. C. A. § 1016(d), which reads:

"No loan shall be made under this section unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property arranges to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of principal."

We had a similar question before us in *Cook v. Donner*, 145 Kan. 674, 66 P. 2d 587. There a loan had been made under the Home Owners' Loan Act of 1933 (12 U. S. C. A. § 1461 *et seq.*), which contained similar provisions to the act under consideration here. There, in order to have the loan made and receive a part of the money, a creditor made representations similar to those made by the bank in this case, but thereafter took a note and mortgage upon the property from the debtor to secure the part of his debt which had not been paid when the federal loan was made. The court held:

"Where a mortgagee at the same time or after he executes to the Home Owners' Loan Corporation a release of all his claims against his debtor, and receives a less amount in bonds from the corporation making the loan to the debtor, agrees secretly or otherwise with the debtor that the debtor will give him a note and second mortgage on the property to cover the loss he has sustained in making the release, such agreement is in violation of the spirit of the act and rules under which the release was made, it denotes bad faith, is against public policy, and the note and mortgage so given are null and void." (Syl. ¶ 2.)

This case has been followed and a similar holding made in the following cases: *McAllister v. Drapeau*, 14 Cal. 2d 102, 92 P. 2d 911, 916; *Morrison v. Landers*, 56 Cal. App. 607, 133 P. 2d 34, 38; *Meek v. Wilson*, 283 Mich. 679, 278 N. W. 731, 735; *Markowitz v.*

*Berg,* 125 N. J. Eq. 56, 4 A. 2d 410, 412; *Dayton Mtg. & Invest. Co. v. Theis,* 62 Oh. App. 169, 23 N. E. 2d 511, 513, 514; *Local Federal Savings & Loan Ass'n v. Harris,* 188 Okla. 214, 107 P. 2d 1012, 1013; *Anderson v. Horst, et ux., Appellants,* 132 Pa. Super. 140, 200 A. 721, 723; *Home Owners' Loan Corporation v. Aiello, et al.,* 62 R. I. 353, 5 A. 2d 649, 650. See, also, 17 C. J. S. 668.

Other cases to the same effect are: *Anderson v. Nelson,* 110 Colo. 374, 134 P. 2d 1053; *Bilgore, et al., v. Gunn, et ux.,* 150 Fla. 799, 9 So. 2d 184; *Robinson v. Reynolds,* 194 Ga. 324, 21 S. E. 2d 214; 68 Ga. App. 66, 22 S. E. 2d 179; *Kniefel v. Keller,* 207 Minn. 109, 290 N. W. 2d 218; *May v. Whitbeck,* 111 Mont. 568, 113 P. 2d 332; *Local Federal Sav. & Loan Ass'n v. Sheets* (Okla.), 130 P. 2d 825; *Oregon & Western Col. Co. v. Johnson,* 164 Ore. 517, 102 P. 2d 928; *McCrory v. Smeltzer,* 132 Tex. 383, 124 S. W. 2d 336; *Ellwood v. Lancaster* (Tex. Cir. App.), 157 S. W. 2d 973.

Many other cases to the same effect are referred to in the cases cited. In *Smith v. Redwine* (Tenn.), 168 S. W. 2d 185, and in *Walker v. Oakley,* 347 Pa. 405, 32 A. 2d 563, where the creditor took from the debtor a second mortgage for the amount unpaid by the Federal loan, but where the same was known to and approved by the loaning agency, the obligations were enforced, but in each of those cases it was held that the secret liens, second to the mortgage lien of the lending agency, were void and unenforceable. Arkansas (*McMillan, Administrator, v. Palmer,* 198 Ark. 805, 131 S. W. 2d 943), and Nebraska (*Krause v. Swanson,* 141 Neb. 256, 3 N. W. 2d 407) appear to be the only jurisdictions not in accord with the authorities hereinbefore cited.

Appellant concedes that if it had taken a mortgage from plaintiff upon the property to secure the balance of its second mortgage not paid by the Federal Land Bank loan the judgment of the court below would have been proper. We think, however, that what was done is governed by the same principle. In drafting the deed the bank made the consideration the unpaid portion of the second mortgage with interest, and the statement of the sum to be paid under the option was computed on an interest bearing basis. Plaintiff remained on the property for more than three years, received such income as there was from it and made payments on the Federal Land Bank loan and on taxes. Still under the plan of instruments drawn by the bank which she executed, she could have paid the bank the amount of the bank's second mortgage, less what it received

from the Federal Land Bank loan with interest thereon, and had her property free from any claim of the bank. The bank could not do indirectly what it could not do directly. Upon the facts the case is much like that of *Geel v. Valiquett*, 292 Mich. 1, 289 N. W. 306, where a broker, under slightly different circumstances, secured a deed which he was endeavoring to hold for the payment of the balance claimed to be due. The deed and the contract were declared void. Moreover, the statement executed by defendant to the Federal Land Bank under date of January 11, 1935, and upon which the Federal Land Bank loan was closed, was sweeping in its terms and included the statement: "that when said consideration is paid, all claims of this creditor against the above named debtor will have been satisfied in full." When the Federal Land Bank mortgage was closed, and the bank had received the amount it had agreed to accept, it had no right to proceed further against either the plaintiff or the farm property (12 U. S. C. A., § 1016[d]). To attempt to do so was against its own representations and agreement, and against the public policy embodied in the statute. There was no consideration for the deed.

The judgment of the trial court is affirmed.