## G. A. NICHOLS BLDG. CO. v. FOWLER.

No. 31849.   June 11, 1946.

Rehearing Denied Sept. 24, 1946.

*172 P. 2d 636.*

Gilliland, Ogden, Withington & Shirk, of Oklahoma City, for plaintiff in error.

Spiers & Bodovitz, of Oklahoma City, for defendant in error.

OSBORN, J.   This action was brought by plaintiff, G. A. Nichols Building Company, a corporation, against defendant, George L. Fowler, to cancel a contract for the sale of real estate, and a deed issued by plaintiff to defendant, and for an accounting.   In the alternative the plaintiff sought recovery of $337.84, the balance due it on the purchase price of said property.   The case was tried to the court, both parties waiving a jury, and the trial court sustained defendant's demurrer to plaintiff's evidence, and dismissed the action.   Plaintiff appeals.

The essential facts are undisputed. On November 27, 1942, defendant, pursuant to negotiations had with one Henshaw, a salesman for plaintiff, signed the following application:

"Application to Purchase
"Copy                 'Exhibit A'
"To G. A. Nichols, Inc.:
"I hereby make application to purchase the following described real estate situated in Oklahoma County, State of Oklahoma, to-wit:

"7306 Surrey

at and for the price of $4560 and hand you herewith the sum of $250 to apply on purchase price of same, and in case this application is accepted I agree to pay for said property as follows:

"Purchaser to place $4100 loan on above property expense to be borne by seller.   Seller to place house in first class condition, grade and plan yard and lawn, fix Driveway,

"All deferred payments shall bear

interest at _____ per cent per annum, payable _____.

"This application is made subject to the restrictions covering _____.

"In case this application is not accepted by G. A. Nichols, Inc., the initial payment herein mentioned will be returned to the applicant. This application shall be binding on G. A. Nichols, Inc., only when same is accepted by the Company and official receipt issued for initial payment.

"Make All Checks Payable to G. A. Nichols, Inc.

"Dated Oklahoma City, Okla. this 27 day of November, 1942.

"Accepted and Initial Payment Acknowledged.

"George L. Fowler
Purchaser

"G. A. Nichols, Inc.

"By _____

1445 NW 32
address
"Chas. E. Henshaw
Salesman."

Thereafter defendant procured a loan of $4,100 secured by a mortgage on the property insured by the Federal Housing Administration under the provisions of 12 U.S.C.A. § 1709. Defendant moved into the property in December, 1942, and a deed was issued and delivered to him on January 14, 1943. The date of the mortgage is not shown, but apparently it was closed up and the money received on March 3, 1943. At the time the application to purchase was signed, defendant paid plaintiff $250. He made no other payment to plaintiff.

12 U.S.C.A. § 1709(b) provides as follows:

". . . Provided, That with respect to mortgages insured under this paragraph the mortgagor shall be the owner and occupant of the property at the time of the insurance and shall have paid on account of the property at least 10 per centum of the appraised value in cash or its equivalent. . . ."

The appraised value of the property is not shown by the record, but the parties tacitly agree that it was $4,560, and that a further payment by defendant of $210 was required to make his cash payment equal to 10 per cent of the appraised value of the property so as to bring the mortgage within the class acceptable to the Federal Housing Administration under the proviso above quoted.

The evidence showed that defendant orally agreed with plaintiff's salesman, Henshaw, that he would borrow this $210 at the bank on an assignment of his wages as security and turn the money over to plaintiff, but this was never done. On the strength of this promise by defendant, plaintiff, joined by defendant, made a written statement to the Federal Housing Administration that defendant had paid $460 in cash on the purchase price of the property, and apparently the mortgage was approved by the Federal Housing Administration in reliance upon that statement. Plaintiff prepared a note and assignment of wages for $337.84, being the $210 above referred to and expenses in making the loan, including insurance premium required to be paid, mortgage insurance to be paid to the Federal Housing Administration, taxes and some other items which were by the mortgagee deducted from the amount of the loan when it was paid to plaintiff. The note and assignment were dated January 10, 1943, but were never executed by defendant. In May, 1943, plaintiff prepared another assignment of wages and a note for $317, but these were never executed by defendant. At the close of the evidence it was stipulated that Henshaw, if recalled by plaintiff, would testify that when the application to purchase was signed he told defendant that the expenses above referred to and deducted from the loan would have to be paid by him.

Plaintiff here contends that in attempting to force defendant to pay the $210 due on the purchase price of the property it is endeavoring to enforce the provisions of the Federal Housing Administration act, and that to defeat

its effort is to defeat that act. It asserts that the public interest will be better promoted by granting it relief than by denying it, citing Local Federal Sav. & Loan Ass'n v. Sheets, 191 Okla. 439, 130 P. 2d 825, and Falkenberg v. Allen, 18 Okla. 210, 90 P. 415. The case last cited is so different factually that it is inapplicable. In Local Federal Sav. & Loan Ass'n v. Sheets, supra, we upheld a judgment canceling a second mortgage taken by the loan company in violation of the HOLC Law, for the reason that to leave the parties where we found them would reward the loan company, and assist in defeating the national policy which forbade such second mortgage. We held that the facts in that case excepted it from the general rule, in that public policy demanded the granting of relief to the mortgagor.

No such reason obtains in the instant case. Here the plaintiff participated in procuring the mortgage to be insured by the Federal Housing Administration, at least to the extent of making a written representation that 10 per cent of the purchase price had been paid when it knew that such statement was false. Plaintiff concedes that the procuring of the mortgage insurance, when the 10 per cent of the appraised value had not been paid, was a violation of the federal act, and the proof that it participated in such violation is undisputed. Certainly it would not effectuate the purpose of the Federal Housing Act, and the public policy pursuant to which it was enacted, to encourage the making of transactions similar to the one involved in this case by permitting the owner of property, after making such representation to the Federal Housing Administration, to recover the unpaid balance of such 10 per cent. Clearly in such case public policy does not demand the granting of such relief, and we think public policy demands that the parties be left where we found them.

In Miller v. Walters, 34 N.Y. Supp. 2d 341, cited by defendant, and which appears to be the only reported case dealing with the question involved in the instant case, a note was given for the balance of the 10 per cent payment required by the federal act, and the court refused to enforce collection thereof. The court said:

"To give validity to the note sued upon would be to sanction a violation of the purpose and spirit of the rules and regulations adopted pursuant to statute and would invite others to adopt a similar plan."

As to the $127.84 expenses in connection with the loan, the trial court admitted parol evidence offered by the plaintiff to show that advance mortgage insurance, war damage insurance, fire insurance, future taxes and similar expenses, going to make up the amount of $127.84, were not included within the term "expenses to be borne by the seller," as used in the contract. Since the contract was in this respect ambiguous, such evidence was properly admitted. Hawkins v. Mattes, 171 Okla. 186, 41 P. 2d 880. Witnesses for the plaintiff testified that the defendant was told that the expenses making up this $127.84 would have to be paid by him and that he repeatedly agreed to pay them but never did. The testimony of these witnesses was positive, uncontradicted and unimpeached, but in sustaining the demurrer to plaintiff's evidence the trial court disregarded it. In so doing the court erred. It is true that where a case is tried to the court without the intervention of a jury, the court treats the demurrer to the evidence as a motion for judgment, weighs the evidence and passes upon the credibility of the witnesses. Universal Life Insurance Co. v. Berry, 177 Okla. 92, 57 P. 2d 879. But even in such case the court may not disregard the positive testimony of witnesses which is uncontradicted and unimpeached. Taggart v. Snipes, 174 Okla. 449, 50 P. 2d 640. As to this item, the court should have overruled the demurrer to the evidence, and permitted the defendant, if he desired, to offer testimony as to the understanding, if any, about such

expenses, and at the conclusion of all the evidence upon such point should have rendered such judgment as the evidence justified.

Affirmed in part and reversed in part, and remanded with directions to proceed in conformity with the views herein expressed.

HURST, V.C.J., and BAYLESS, CORN, and DAVISON, JJ., concur. RILEY and WELCH, JJ., dissent.

---

RILEY, J. (dissenting). This action was commenced by G. A. Nichols Building Company against George L. Fowler for rescission of a contract for the sale of real estate and to cancel a deed issued by plaintiff in pursuance of the contract, and for an accounting. In the alternative, plaintiff sought recovery of $337.84, $210 of which plaintiff alleged was the balance due on the purchase price and for which it asserted a lien on the premises. The balance, $127.84, plaintiff claimed to be due in connection with ·a $4,100 loan on the property mentioned in the contract of purchase. The claim is that the mortgage company withheld the sum of $127.84 from the proceeds of the loan, which was properly chargeable to defendant. The items making up the $127.84 were: $20.21 for the first year's federal housing insurance of the mortgage; $1.63 for one monthly payment on the second year of such insurance; $4.10 for war damage insurance; $50.74 for one year's fire insurance; $4.23 for one month's installment on the fire insurance for the second year; $5.62 tax deposit for the ensuing year; $4.63 withheld by the mortgagee; and interest on $4,401.96 of the purchase price of the property from January 10, 1943, to March 1, 1943, in the sum of $36.68.

Defendant answered by general denial and by special plea of estoppel by reason of representations made by plaintiff to the Federal Housing Administration that the item sued for had been paid.

The issues were tried to the court without a jury. At the close of plaintiff's evidence the court sustained a demurrer and dismissed the action. Plaintiff appeals.

There is no substantial conflict in the evidence.

The mortgage loan was insured by the Federal Housing Administration. Defendant moved into the property late in December, 1942, or early in January, 1943. Deed was delivered to him about January 14, 1943. The date of the mortgage is not shown, but apparently it was some time shortly before March 3, 1943, at which time the loan was finally closed and the sum of $3,752 of the proceeds of said loan was paid to plaintiff.

At the time the application to purchase was signed, defendant paid plaintiff the sum of $250 in cash. That was all he ever paid other than that paid out of the proceeds of the $4,100 loan. Therefore, giving defendant credit for the full $4,100 loan, the plaintiff received, in all, $210 less than the specified purchase price. Defendant admitted that he had not paid that $210.

On November 30, 1942, three days after the date of the purchase agreement, and apparently after defendant had made application to Bomford Bros. for the loan, defendant and plaintiff, by its secretary-treasurer, made a statement in writing directed to the Federal Housing Administration, as follows:

"Oklahoma City, Oklahoma
"November 30, 1943

"Federal Housing Administration
"2d Floor Cotton Exchange Building
"Oklahoma Ctiy, Oklahoma
"In Re: Loan No. _____

"Gentlemen:

"Supplementing the information contained in the application in the above numbered loan, the undersigned offers the following data for your use in further considering said loan for mortgage insurance:

"1. Description of security: 7306 Surrey Place, Nichols Hills

"2. Date of purchase November 30, 1942

"3. Purchase price $4560.00

"4. Cash payment on purchase price $460.00

"5. Date of said cash payment November 30, 1942

"6. Value of property given in exchange on the purchase price $_____ Amount of Mortgage on same $_____

"7. Street number of property traded:

"Yours respectfully,

"G. A. Nichols Inc. (seller)

"By (Signed) J. W. Coyle

"(Signed) George L. Fowler (purchaser)."

The uncontradicted evidence was that defendant had agreed with plaintiff's salesman, Henshaw, that he would borrow the $210 at the bank, on an assignment of his wages as security, and pay the same to plaintiff as further down payment on the purchase price so as to make the total down payment $460. The evidence also shows that it was on the strength of this agreement and promise of defendant and on the presumption that defendant had complied with his agreement or there had been compliance, or that he would comply with his promise before the loan was completed, that plaintiff made the written statement above quoted, to the Federal Housing Administration stating that $460 had been paid on the purchase price and that the same was paid November 30, 1942. If so, the plaintiff may be said to have been in good faith when it joined defendant in a false statement to the federal government's agency. The evidence also showed that the items sued for as above set out, amounting to $127.84, were withheld from plaintiff out of the proceeds of the loan.

At the close of the evidence, the witness Henshaw not being present, it was stipulated that if he were recalled he would testify that when the application to purchase was signed, he told defendant that the insurance, interest, and other items mentioned, if deducted, would have to be paid by defendant. It was also stipulated that if defendant Fowler were recalled, he would testify that no such statement was made.

The principal contention is that the court erred in sustaining the demurrer to plaintiff's evidence and in rendering judgment dismissing the action.

12 U.S.C.A. § 1709(b), in part, reads:

". . . Provided, That with respect to mortgages insured under this paragraph the mortgagor shall be the owner and occupant of the property at the time of the insurance and shall have paid on account of the property at least 10 per centum of the appraised value in cash or its equivalent. . . ."

The appraised value of the property was not shown, but the parties apparently agree that it was the same as the purchase price, namely, $4,560. This being true, the federal act required a down payment in cash, or its equivalent, of not less than 10% before the Federal Housing Administration would insure the mortgage. Apparently it was because plaintiff, joined by defendant, made the signed statement to the Federal Housing Administration that the purchase price was $4,560, that there was a cash payment on the purchase price of $460, and that the date of said cash payment was November 30, 1942, which statement was untrue in that only $250 cash payment had been made, that the court sustained the demurrer to plaintiff's evidence. This clearly appears from the remarks of the trial court when the decision of the court was announced. The court called attention to the H.O.L.C. cases by this court upon which defendant in part relies. They are: Local Federal Sav. & Loan Ass'n v. Harris, 188 Okla. 214, 107 P. 2d 1012, and Local Federal Sav. & Loan Ass'n v. Sheets, 191 Okla. 439, 130 P. 2d 825. Defendant also cites Pries v. Hurning, 218 Minn. 189, 15 N. W. 2d 515, and Miller v. Waters, 34 N. Y. Supp. 2d 341.

The two H.O.L.C. cases by this court

lay down the rule that where the Home Owners Loan Corporation refunded mortgage indebtedness without knowledge that the creditor was taking from the debtor a second mortgage for the difference between the proceeds of the loan and the amount of the debt refunded, the second mortgage was invalid and unenforceable. The Sheets Case, supra, also holds that the rule that the parties to a contract tainted with illegality will not be granted relief, does not obtain where public policy requires that relief be granted and that money paid under an illegal contract may be recovered when the illegality grows out of a law designed for the protection of the party seeking recovery. In both of these cases the creditors intentionally took the notes and mortgages with full knowledge that they had agreed to accept the proceeds of the mortgages executed under the federal law, in full satisfaction of their debts. This was true in Pries v. Hurning, supra.

In Miller v. Waters, supra, the defendant purchased a family house for $6,290, to be paid for: $5,400 first mortgage and $890 cash. Instead of paying $890 cash, the purchaser paid only $600 and gave a note in the amount of $290 as part of the purchase price. $25 had been paid on the note and suit was for the $265 balance. There, as here, the U. S. Government did not lend any money. The Federal Housing Administration agreed to and did insure the mortgage. In that case, the court said:

"Evidently there was concealed from the Federal Housing Administration either that all the cash above the mortgage was not paid, or if there was a balance represented by a note, that it was not secured by property or collateral owned by the mortgagor independently of the mortgaged property."

In that case the seller actively and intentionally participated in the violation of the federal requirements.

In the instant case the evidence before the court differs in this: It does not show that plaintiff actually intended to deceive the Federal Housing Administration when it made the representation which turned out to be untrue. Plaintiff's witness who signed the statement testified that he knew that defendant had agreed to borrow the $210 from the bank and with the money thus obtained, make up the full 10% cash payment and that he presumed that defendant had complied with his agreement and had made the payment, or at least that the payment of $210 would be made before the loan was closed.

For the purpose of the demurrer, this testimony must be taken as true. Therefore, it does not appear that plaintiff intentionally deceived the Federal Housing Administration and willfully led it to insure the loan, in making the statement. Furthermore, it would appear that plaintiff was justified in presuming that the defendant had complied with his agreement since it was the defendant who made application for such a loan, in violation of the law.

The reason the courts do not allow recovery in actions such as the H.O.L.C. cases is the illegal agreements between the mortgagee and the debtor. Here there was no illegal agreement between plaintiff and defendant. Defendant had agreed to make the down payment of $460. It was by subsequent breach by defendant of his own agreement and the negligence on plaintiff's part in failing to ascertain that defendant had not carried out his agreement when it made the signed statement which induced the Federal Housing Administration to insure a loan where the mortgagor had not paid 10% of the purchase price of the mortgaged property. The act of plaintiff relied upon by defendant to invalidate plaintiff's claim for payment of the $210 was not an original illegal agreement as was the fact in the H.O.L.C. cases, supra, but the subsequent alleged wrongful act of plaintiff in joining defendant in representing to the Federal Housing Administration that said $210 had been paid, was the wrong,

and it, so far as the evidence shows, was apart from the purchase contract.

The general rule is that:

"A contract originally valid is not rendered invalid by a subsequent agreement. A valid debt cannot be invalidated by proof of a separate and distinct illegal transaction between the parties." 12 Am. Jur. 718.

The rule cited in Local Federal Sav. & Loan Ass'n v. Sheets, as stated in 12 Am. Jur. 729-730, is the governing rule:

"Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal agreements, and the rule is adopted, not for the benefit of the parties, but of the public. It is evident, therefore, that cases may arise even under agreements of this character in which the public interests will be better promoted by granting than by denying relief, and in such cases the general rule must yield to this policy. Hence, even between parties in pari delicto, relief will sometimes be granted if public policy demands it. The general rule operates only in cases where the refusal of the courts to aid either party frustrates the object of the transaction and takes away the temptation to engage in agreements contra bonus mores or in violation of the policy of the law. If it is necessary, in order to discountenance such transactions, to enforce such an agreement at law or to relieve against it in equity, it will be done, though both the parties are in pari delicto. The party is not allowed to allege his own turpitude, in such cases, when he is the defendant at law; nor is he prevented from alleging it when he is the plaintiff in equity, if the refusal to execute the agreement at law or the refusal to relieve against it in equity would give effect to the original purpose and encourage the parties engaging in such transactions. In such cases the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public, the guilty party to whom relief is granted being only the instrument by which the public is served."

In the Sheets Case, supra, that rule was applied in allowing the mortgagor to recover money paid on an illegal mortgage although the mortgagor was a party to the illegal agreement which rendered the mortgage invalid.

It may be that upon a new trial defendant may present evidence which would take the case out of the rule, but so far as the evidence now stands, the rule there applied is fairly applicable to defendant in this case and the public interest would be better promoted by granting than denying the relief against him. He knew, when he joined in the statement to the Federal Housing Administration, that he had not paid the $210 balance of the down payment. If he had not at that time borrowed the $210 from the bank and paid it on the down payment, then he was willfully and intentionally deceiving the Federal Housing Administration. Defendant could atone for the wrong by his performance. If so, his defense as to the $210 balance of the purchase price comes within the rule stated in 12 Am. Jur. 723:

"It has often been stated that the defense is a very dishonest one and it lies ill in the mouth of defendant to allege it, and it is only allowed because public policy requires its allowance the better to secure the public against dishonest transactions."

As to the $127.84 withheld from plaintiff out of the proceeds of the loan, the trial court admitted parol evidence offered by the plaintiff to show that advance mortgage insurance, war damage insurance, fire insurance, future taxes, and similar expenses going to make up the amount were not included within the term "expense to be borne by the seller" as used in the contract. Since the contract was, in this respect, somewhat ambiguous, such evidence was properly admitted. Hawkins v. Mattes, 171 Okla. 186, 41 P. 2d 880. Witnesses for the plaintiff testified that the defendant was told that the items making up this $127.84 would have to be paid by him and that he repeatedly agreed to pay them, but never did so. The testimony of these witnesses was positive, uncontradicted, and unimpeached, but in sustaining the demurrer to plaintiff's evidence the trial court

disregarded it. For the purpose of the demurrer, this evidence must be taken as true. Where a case is tried to the court without the intervention of a jury, the court treats the demurrer to the evidence as a motion for judgment. The trial court weighs the evidence and passes upon the credibility of the witnesses. Universal Life Ins. Co. v. Berry, 177 Okla. 92, 57 P. 2d 879. But the court may not disregard the positive tesitmony of witnesses which is uncontradicted and unimpeached. Taggert v. Snipes, 174 Okla. 449, 50 P. 2d 640. The court should have overruled the demurrer to the evidence as to all the items of plaintiff's claim and permitted the defendant, if he desired, to present evidence in his behalf, and at the conclusion of all the evidence, the learned trial judge should have rendered such judgment as the evidence warranted. Since all the Justices agree that the demurrer should have been overruled, in that the petition stated a cause of action in part, there is no good reason why the demurrer should not be overruled in whole subject to defendant's proof adverse to plaintiff's good faith in reliance upon the fraud of defendant joined in by plaintiff's agent. However, the fact seems to be that while plaintiff's agent may have been spotted with error, defendant is wholly tarred by the brush he wields to avoid payment of his just debts. The policy as to the granting of relief as between parties in pari delicto is sustained by this court's decision in Camp v. Camp, 196 Okla. 199, 163 P. 2d 970.