270 P.2d 980

**FLANAGAN HOME BUILDERS CO.**

**v.**

**McNAMARA et al.**

**No. 5676.**

Supreme Court of New Mexico.

May 20, 1954.

McAtee & Toulouse, Albuquerque, for appellants.

K. Gill Shaffer and Jack Albert Smith, Albuquerque, for appellee.

SADLER, Justice.

The defendants below complain in this Court as appellants of a judgment entered by the district court of Bernalillo County against them in favor of plaintiff consisting of an item of $970 with stated interest, as the balance due on a certain installment note and for another item of $150 as the balance due on a certain check described in the judgment. The obligations sued upon were given in connection with an F. H. A. (Federal Housing Administration) loan procured by the defendants on a residence property they were acquiring in the City of Albuquerque to be occupied as a home.

It was on or about the 9th day of September, 1949, that the plaintiff and defendant, Patrick H. McNamara, entered into the original memorandum agreement, which took the form of a receipt acknowledging a deposit of $1,800 on the purchase of Lot 3, B. 8 in Clayton Hts. Addition with two-bedroom house, including paving walk and drive ribbon. The receipt went on to recite that the full purchase price was $8,300 and balance to be paid when usual and customary papers were completed, as follows:

F. H. A. loan and terms of $6,500 with interest on deferred payments at 4½% per annum, payable monthly, warranty deed and abstract of title, or title insurance showing marketable title to be furnished by seller as soon as possible, showing property clear of all liens and encumbrances. There were certain other stipulations in the form of receipt unnecessary to be here recited.

Under the terms of the foregoing contract, defendants agreed to purchase the property for $8,300, of which $1,800 was to be in cash and the balance by F. H. A. insured loan in the sum of $6,500. However, at the time the contract was entered into the defendants did not have $1,800 in cash with which to make the agreed down payment, but being anxious to obtain a home and plaintiff being in need of cash and anxious to make the sale to some one who could qualify for a loan in the sum of $6,500, the loan value placed on the property by the F. H. A., it was orally agreed between the parties that plaintiff would

allow defendants some additional time in which to raise the down payment. The suggestion was made that they could do so by selling or mortgaging their automobile, in conformity with which the plaintiff readily agreed to proceed forthwith to obtain a loan and otherwise close the deal.

A little while later, the defendant having failed to produce the cash as contemplated, at plaintiff's request they gave it an unsecured promissory note in the sum of $1,500 to cover the balance due on the down payment. The defendants also gave plaintiff a check in the sum of $200 to cover closing costs, which later proved to be worthless. After these steps had been taken, the defendants paid the plaintiff $50 on the check.

The note hereinabove referred to given plaintiff by defendants, as above stated, read as follows:

"Installment Note
September 9, 1949
"$1500.00

"For value recieved, I, we, or either of us promise to pay to *Home Builders Co.*, or order, the sum of One Thousand Five Hundred and No/100 Dollars, said amount to be paid in 36 installments of 1st 12 months at $10.00 per month, each payable monthly after date *October 1, 1949* until the whole amount first herein named and any interests or costs shall have been paid in full. We agree that any of all installments overdue shall bear interest at 6% per annum and that the failure to pay any installment at the time and place herein specified shall without notice or demand, at the option of the holder, cause the whole amount remaining unpaid to become due and payable at once. In case this note is placed in the hands of an attorney for collection, all makers or indorsers hereof agree to pay a reasonable attorney's fee (not less than 6% of the amount due hereon) and all costs. We waive protest and notice of dishonor and agree that after maturity of this obligation or any installment thereof, the time of payment of the same may be extended at the request of anyone liable hereon without releasing any maker or indorser hereof.
"S/   Bulah F. McNamara
          S/   Patrick C. McNamara."

After signing the above mentioned receipt, called a "real estate binder contract," the plaintiff delivered the contract to the Gulf Coast Investment Company, Mortgagee. This company, from information secured from the contract itself, Tom L. Flanagan of the plaintiff company and the defendants, prepared all the necessary legal papers, including F. H. A. applications and commitments. The application signed by defendants to F. H. A. showed on its face that the down deposit of $1,800 was paid in cash. Furthermore, neither

the defendants, nor any officer or employee of plaintiff, ever notified Gulf Coast Investment Company, or the F. H. A. that defendants had paid only $300 cash and given a $1,500 note for the balance of the down payment, but these facts were fully known to defendants and to the plaintiff and its officers.

After these events had transpired, the F. H. A. approved insurance for the loan and Gulf Coast Investment Company loaned the sum of $6,500 and accepted back a mortgage on above mentioned property in like sum from the defendants. At the time of the transactions recited, and especially at time of the sale mentioned, both the defendants and the plaintiff and its officers and employees were cognizant of and familiar with the following F. H. A. rules and regulations, to-wit:

"(a) Title 24 Sec. 221.27 of 1949 Edition Code of Federal Regulations, as follows:

" 'Mortgage must be only lien upon property. A mortgagor must establish that after the mortgage offered for insurance has been recorded, the mortgaged property will be free and clear of all liens other than such mortgage and that there will not be outstanding any other unpaid obligation contracted in connection with the mortgage transaction or the purchase of the mort-

gaged property, except obligations which are secured by property or collateral owned by the mortgagor independently of the mortgaged property: * * *.'

"(b) Title 24, Sec. 221.15 of 1949 Edition Code of Federal Regulations as follows:

" 'Maximum Amount of Mortgage and appraisal value of property

" '(a) If the amount of the mortgage does not exceed $6300.00 and there is located upon the property a dwelling designed principally for a single family residence, the construction of which:

" '(1) * * *

" '(2) * * *

" 'Such mortgage may exceed 80 percent, provided at the time the mortgage is insured the mortgagor is the owner and occupant and has paid on account of the property at least 10 percent of its appraised value of the property in cash or its equivalent, must not exceed 90 percent of the appraised value of the property as of the date the mortgage is accepted for insurance.

" '(b) If the amount of the mortgage does not exceed $9500.00 and the property complies with all of the conditions set forth in paragraph (a) of this section * * *.' "

The required amount to be paid in cash as a down payment in connection with said sale was $830.

Having found the facts as hereinabove recited, the trial court concluded as a matter of law, as follows:

"1. That both plaintiff and defendant violated the rules and regulations in regards to cash down payment and secondary financing for the purchase of the home in question.

"2. That the said note was made in violation of both Federal Rules and Regulations and Statute.

"3. That said Statute and Rules and Regulations do not provide that any agreement for the payment of a down payment made in violation of said Statute and Rules and Regulations shall not be enforceable, however, an arrangement, such as the one involved in the present case, would be contrary to public policy for obvious reasons.

"4. That the Court, after considering all the facts in a case like the present one, is not required to declare the entire balance due on the down payment uncollectible but can take whatever action it feels would be equitable under the circumstances.

"5. That under the facts in this case the plaintiff should not be permitted to collect $830.00 of the $1800.00 down payment because of the law violations involved, however, he should be permitted to collect the balance of the down payment because it would be unfair to permit the defendant to escape payment of the entire down payment because of their participation in the unlawful act."

Notwithstanding the trial court's conclusion that both plaintiff and defendant violated the rules and regulations promulgated by F. H. A. in regard to cash down payment and secondary financing for the purchase of the home in question and that the note sued upon was made in violation of both Federal Rules and Regulations as well as Statute; nevertheless, because the Statute or rules and regulations did not provide that any agreement for down payment made in violation thereof should not be enforceable, the court felt it was not required to hold the entire balance due on the down payment uncollectible but could "take whatever action it feels (felt) would be equitable under the circumstances." Thus it was that the court rendered judgment for the amounts mentioned above, of which the defendants as appellants complain before us.

In so concluding we think the trial court erred. The two cases most nearly in point so far as we have been able to ascertain

by the research made are Miller v. Walters, Mun.Ct., 34 N.Y.S.2d 341, and G. A. Nichols Bldg. Co. v. Fowler, 197 Okl. 476, 172 P.2d 636. Both cases involved F. H. A. loans, as here, and the provisions with which we are here concerned. In each instance the court held as contended for by the defendants in the case at bar. In the Miller case, the holding is epitomized in second paragraph of the syllabus, as follows:

"Where defendant purchased a home and executed first mortgage which Federal Housing Administration agreed to insure and at time of closing of purchase contract defendant paid $600 in cash and gave note in amount of $290 as part of purchase price, the note, which violated rule adopted under National Housing Act prohibited any other unpaid obligation contracted in connection with insured mortgage transactions, was invalid."

In the Fowler case from Oklahoma, we find the holding in paragraph one of the syllabus prepared by the court reading, as follows:

"Where the seller of real estate co-operated with the purchaser in procuring a mortgage to be insured by the Federal Housing Administration, by representing that the purchaser had paid to the seller, in cash, a sum equal to ten per cent of the appraised value of the mortgaged property, as required by 12 U.S.C.A. § 1709, when in fact the purchaser had paid only a part of said sum, but had orally agreed to pay the remainder at a later date, the courts will not assist the seller to recover the unpaid balance."

The holdings in the two cases cited find support in the conclusion reached in our own recent decisions in the cases of Goldenberg v. Village of Capitan, 55 N.M. 122, 227 P.2d 630, and Brown v. Village of Deming, 56 N.M. 302, 243 P.2d 609.

It follows from what has been said that the trial court erred in rendering the judgment it did. Accordingly, its judgment will be reversed and the cause remanded with a direction to the trial court to set aside its judgment and enter another dismissing the complaint.

It is so ordered.

McGHEE C. J., and COMPTON and LUJAN, JJ., concur.

SEYMOUR, J., not participating.