Suit to cancel a note and deed of trust, and to restrain a foreclosure. It is contended that the deed of trust is void abinitio. This court has jurisdiction, as title to real estate is involved. Peters v. Kirkwood Federal Savings Loan Assn.,344 Mo. 1067, 130 S.W.2d 507. An appeal was perfected from a decree of cancellation.
In 1933, plaintiffs-respondents were indebted to defendant-appellant, Mrs. Findlay J. Pinkerton; their promissory note evidencing this debt was secured by mortgage on their home. Their property was also encumbered by a second mortgage to secure a note, defendant Fred A. Blake, payee. Respondents made application to Home Owners' Loan Corporation (hereinafter referred to as H.O.L.C.) for a loan of $4750. (See Home Owners' Loan Act of 1933, Title 12, U.S.C.A., sec. 1461 et seq.) December 2, 1933, appellant signed a mortgagee's consent to take bonds in the sum of $4220 "in full settlement of the claim of the undersigned." December 4, 1933, defendant Blake signed a like consent to take bonds in the sum of $481.70 in full settlement of his claim. The "consents" were to be binding for a period of ninety days from date. H.O.L.C. rejected the loan, but reconsidered, and closed a loan of $4400 in bonds, March 20, 1934, having received a letter under date of February 24, 1934, as follows,
"We have your letter of Jan. 11th in reference to the property of Alexander Cannon at 7519 Folk Avenue, Maplewood, Mo., in which you show an appraisement of $5,500.00 and make a bond loan of $4,400.00.
"As representative of the holder of the first deed of trust and second deed of trust, and also the owner of the property, have to advise that we will accept this bond loan of $4,400.00 and have to request that you proceed as quickly as possible to make arrangements for this loan."
The letter was signed "John S. Blake Bro. Realty Co., By Fred A. Blake, Vice Pres."
March 20, 1934, an authorization for delivery of $3875, H.O.L.C. bonds, was signed "Fred A. Blake by Fred W. Moeller." After the H.O.L.C. loan was completed, plaintiffs executed a note for $830 secured by a deed of trust (second and subservient to the lien of the deed of trust of H.O.L.C.), defendant Fred Grueninger, payee and beneficiary, defendant Fred A. Blake, trustee. The principal ($830) was the difference between the sum of the secured debts, originally owing unto appellant and defendant Blake, and the $4400, bonds, the consideration of the note secured by the first lien executed *Page 297 
to H.O.L.C.; that is, the sum of $830 was a part of theindebtedness which H.O.L.C. refunded. It is the validity of the note of $830, owned by appellant, and of the second deed of trust securing it, which is involved in the case at bar.
[305] Appellant contends herein (1) that there was no showing that Fred A. Blake (or Fred W. Moeller) had authority to act for her; (2) that she has "never released or relinquished her right to full reimbursement for the amount represented by the deed of trust herein involved"; (3) that the Home Owners' Loan Act does not prohibit liens subservient to the first liens of H.O.L.C., and the execution of the second lien did not offend public policy. Respondents contend that the $830 note and the lien securing it are in violation of Paragraph (d) of Section 1463, Title 12, Home Owners' Loan Act of 1933, supra, and against public policy.
[1] Of appellant's contention that Fred A. Blake and Fred W. Moeller were not authorized to act for her — we can only say that Blake and Moeller assumed to act for appellant, and nowhere herein is it asserted that she did not receive and retain a portion of the bonds of H.O.L.C. She should not now say that the acts of Blake and Moeller in participating in the consummation of the H.O.L.C. loan were unauthorized by her. St. Louis Mut. Life Ins. Co. v. Walter, 329 Mo. 715, 46 S.W.2d 166; Markowitz v. Berg et al., 127 N.J. Eq. 90, 11 A.2d 107; Vol. I, Restatement of the Law of Agency, sec. 91, p. 219.
[2] And her acts through her agents in the procurance of the H.O.L.C. bonds, though at a time more than ninety days after December 2, 1933, must have related back and reaffirmed the "consent" given in her letter of that date, no evidence being introduced showing that H.O.L.C. (which was acting in the administration of the Act for the benefit of respondents, as we shall presently see) was advised that she was not accepting the bonds "in full settlement" of her claim. Markowitz v. Berg et al., supra; Stager v. Junker et al., 14 N.J. Misc. 913, 188 A. 440.
[3] The Home Owners' Loan Act of 1933 was enacted by the Congress "To provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes occupied by them and who are unable to amortize their debt elsewhere, . . ." See Public Act No. 43, 73d Congress (H.R. 5240). Enacted during a period of serious economic depression, the Act is an emergency measure with the very apparent purpose of relieving the burden of liens to an extent that a home owner may be able to "carry" and ultimately discharge his indebtedness, and so retain the ownership of the dwelling place of an American family. Such benefits as accrue to the lienholder by virtue of the Act are incidental. The Act does not compel the lienholder to discount the debt secured by his lien, and he can lawfully exact the *Page 298 
full amount of his claim. But should he elect to participate in the refunding of the home owner's indebtedness, the lienholder emphatically may be said to be benefited by receiving H.O.L.C. tax-exempt bonds, guaranteed by the United States government; and by avoiding the necessity of either extending forbearance, or of foreclosing his lien with possible resultant onerous ownership of the property in him. The legislation was enacted primarily for the benefit of the home owner, however.
Observe that the H.O.L.C. bonds exchanged in the case at bar were of the face value of $4400, or 80 per centum of the appraised value ($5500) of the property. It is provided that the face value of the bonds authorized to be exchanged by H.O.L.C. shall not exceed "80 per centum of the value of the real estate as determined by an appraisal." Paragraph (d), sec. 1463, supra. November 3, 1933, by resolution, pursuant to authority to adopt regulations as in the Act provided (Paragraph (k), sec. 1463, Title 12, U.S.C.A.), it was resolved by H.O.L.C., "In the case of bond exchange loans, if the home owner owes more than 80 per cent of the value of his premises he may remain indebted for that portion that the Corporation cannot refund, provided the Corporation secures a first lien, and he may secure the excess indebtedness with a second lien. However, such refunding will not be carried through unless such excess indebtedness is placed on a payment basis so that the home owner will have a reasonable opportunity to pay the same and meet his obligations to this Corporation." Clearly this resolution is not inconsistent with the purpose of the Act. In some instances, though the lienholder refused to discount the debt secured by his lien, the home owner would be able to carry a debt secured by a second lien on his home in excess of the 80 per centum of its value which H.O.L.C. is authorized to refund, if the debt were placed on a sufficiently extended payment basis. If H.O.L.C. could not make a loan in such an instance, a lienholder, in exacting the full amount of [306] his claim, might forestall the purpose of the Act, however sound the refunding of the particular home owner's indebtedness were considered to be.
Now, H.O.L.C. has the duty of administering the Act in accordance with its purpose and intent, and so has the responsibility of determining the questions of the home owner's worthiness of relief, and the soundness of the refunding of his indebtedness. The lienholder knows the end to which H.O.L.C. is acting in the exercise of its duty and responsibility, and, if he elects to participate in the H.O.L.C. refunding and agrees to take H.O.L.C. bonds "in full settlement" of his claim, it would seem that he should disclose to H.O.L.C., prior to the closing of its loan, the amount and the terms of any exaction he has made, or will make, relative to that portion of his lien which H.O.L.C. cannot refund, for such an exaction would affect the question of the soundness of the refunding of the home *Page 299 
owner's indebtedness. But if, notwithstanding, a second lien ofwhich H.O.L.C. is not advised can be lawfully exacted by a participating lienholder (who has agreed to take bonds "in full settlement" of his claim) to secure that portion of his debt not satisfied by the H.O.L.C. bonds, H.O.L.C. would have thus acted in the making of the refund without full knowledge of the burden of the home owner's indebtedness — the home owner's ability to meet the payments of his indebtedness might thus continue to be overburdened, his home lost to him and to his family by foreclosure, and the purpose of the Act defeated. The instant case is illustrative.
The Act purposed to enable the owner to satisfy the liens on his home, not to effect the postponement of the foreclosure of them.
In the case at bar it is inferred from the evidence that H.O.L.C. was not advised that the second lien was to be executed. And we infer, from the only evidence bearing on this subject, that there was no contract between respondents and appellant, prior to the closing of the H.O.L.C. loan, by which respondents undertook to execute the second lien. Evidence was introduced tending to show that the execution of the second lien was exacted subsequently to the closing of the H.O.L.C. loan. There could be no difference in the effect of the second lien, as it bears upon the purpose of the legislation, whether the execution of the lien was agreed upon prior, or subsequently, to the closing of the H.O.L.C. loan.
The case exemplifies a transaction, we believe, in violation of the spirit and purpose of the Act.
The views herein expressed and our result are not of universal concurrence. See Krause v. Swanson et al., 141 Neb. 256, 3 N.W.2d 407; and McMillan v. Palmer, 198 Ark. 805, 131 S.W.2d 943. However, the result is in harmony with the rulings of the great majority of the courts whose decisions we have examined. Anderson v. Horst et ux., 132 Pa. Super. 140, 200 A. 721; Johnson v. Matthews, 301 Ill. App. 295, 22 N.E.2d 772; Council et al. v. Cohen, 303 Mass. 348, 21 N.E.2d 967; First Citizens Bank Trust Co. v. Speaker, 250 A.D. 824, 294 N.Y.S. 737; Jessewich v. Abbene, 154 Misc. 768, 277 N.Y.S. 599; Dayton Mortgage 
Investment Company v. Theis, 62 Ohio App. 169, 23 N.E.2d 511; Stager v. Junker et al., supra; Chaves County Building Loan Assn. v. Hodges, 40 N.M. 326, 59 P.2d 671; McAllister v. Drapeau, 14 Cal.2d 102, 92 P.2d 911; Meek v. Wilson,283 Mich. 679, 278 N.W. 731; Schram v. Welton et ux., 35 F. Supp. 889; Markowitz v. Berg et al., supra; Local Federal Sav. Loan Assn. v. Sheets et ux., 191 Okla. 439, 130 P.2d 825; Local Federal Sav. Loan Assn. v. Harris et ux., 188 Okla. 214,107 P.2d 1012. In the case of Ridge Investment Corp. v. Nicolosi, 15 N.J. Misc. 569, 193 A. 710, the personal note, and in the cases Bay City Bank v. White et al., 283 Mich. 267, 277 N.W. 888; Sirman v. Sloss Realty Co., 198 Ark. 534, 129 S.W.2d 602; *Page 300 
Shiver v. Liberty Building-Loan Assn. et al., 16 Cal.2d 296,106 P.2d 4; and Walker v. Oakley et al., 347 Pa. 405, 32 A.2d 563, the second liens, procured by the lienholders, in the respective cases, were held valid. Under the facts of these cases it appears that H.O.L.C. was advised of the proposed exactions before its loans were consummated. In the case of Cook et ux. v. Donner et ux., 145 Kan. 674, 66 P.2d 587, an agreement for a second lien is said to be void, in any event, if the lienholder has agreed with H.O.L.C. to accept its bonds "in full settlement" of his claim.
The results of the cases above cited were not all reached upon the same basis of decision. For studies and classifications of the bases of decision of the cases cited, and [307] of other cases (not cited herein) involving our question, consult 110 A.L.R. 250, 121 A.L.R. 119, and 125 A.L.R. 810; 52 Harvard Law Review 842; and 38 Michigan Law Review 508.
The decree of cancellation should be affirmed.
It is so ordered. Bradley and Dalton, CC., concur.