ERNEST H. KRAMER and CORA B. KRAMER, Appellants, v. GURDE M. JOHNSON, A. MARIE JOHNSON, JULIUS C. GARRELL, JR., as Trustee, Respondents, No. 42001—238 S. W. (2d) 416.

Division One, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

*Lester W. Spilker, Joseph Boxerman* and *Joseph Nessenfeld* for appellants.

*Ninian M. Edwards* and *N. Murry Edwards* for respondents.

[417] DALTON, J.—Action to enjoin the foreclosure of a second deed of trust on described real estate in the City of St. Louis and for cancellation of the deed of trust and the notes secured thereby, with a cross-action for judgment on the notes. The trial court found the issues for the defendants, dismissed plaintiffs' petition with prejudice and entered judgment for defendant A. Marie Johnson for the amount due on the notes. Plaintiffs have appealed and it is contended that the notes and deed of trust were void ab initio. Title to real estate is, therefore, directly involved and this court has jurisdiction of the appeal. Cannon v. Blake, 353 Mo. 294, 182 S. W. (2d) 303.

Some facts are not in dispute. Appellants have owned the described real estate since 1928. In 1934 the property was subject to two deeds of trust securing a balance of principal in the sum of $11,500. Interest and taxes were delinquent. The notes secured by the deeds of trust were owned by Gurde M. Johnson and A. Marie Johnson, husband and wife, who were demanding payment of the indebtedness. Appellants made application to the Home Owners' Loan Corporation (HOLC) for a loan. The property was duly appraised through the St. Louis office and the preliminary appraisal showed a valuation of $13,210.04. Appellants were advised that the property "would stand for a bond loan of $10,568.03, however, this amount must include all liens of every description against the property, as well as other items necessary to be included in the loan * * *." The loan application was denied with the statement that, "if the mortgagee will write down or reduce his lien so as to bring the entire indebtedness within the 80% appraised value, then this file might be reopened and the loan proceeded with to a final determination."

On March 10, 1934, the HOLC closed a loan on appellants' described property for $10,568.00. Appellants approved a disbursement sheet purporting to include an item [418] of $10,286.08 "advanced to lien holders * * * G. M. and A. Marie Johnson," the approval being as follows: "The undersigned owners of the real estate for whose benefit the above expenditures in cash and bonds were made by the Home Owners' Loan Corporation, do hereby acknowledge receipt of the cash and bonds, as described above, and approve the disbursements

as shown.'' The HOLC received and holds a first lien on the described real estate.

Thereafter, the appellants executed a second deed of trust, dated March 10, 1934, to A. Marie Johnson and Gurde M. Johnson, her husband, as beneficiaries to secure the payment of one note of that date for the principal sum of $1435.00, due and payable 3 years after date, and six interest notes, each in the amount of $43.05, due and payable, respectively in 6, 12, 18, 24, 30 and 36 months after date. This deed of trust was made subject to a first deed of trust to the HOLC. Thereafter, the appellants paid the first and second interest notes secured by this second deed of trust and, on September 30, 1936, made a $20 payment on the third interest note. In 1948, at the direction of respondent A. Marie Johnson, respondent Julius C. Garrell, Jr., successor trustee in the deed of trust, began foreclosure proceedings. The described property was advertised for sale on the second day of September 1948 for the purpose of discharging the alleged indebtedness evidenced by the described notes. On August 26, 1948, appellants instituted this action. Thereafter, the death of defendant Gurde M. Johnson was suggested and appellants dismissed as to him.

In the second amended petition upon which the cause was tried, the appellants sought relief on the following grounds: (1) that the notes and deed of trust were obtained by fraud, misrepresentation, duress and coercion on the part of Gurde M. Johnson and A. Marie Johnson; (2) that Gurde M. Johnson and A. Marie Johnson ''did agree in writing with the Home Owners' Loan Corporation 'to accept in full settlement  *  *  *  the sum of $10,568.03, less taxes, face value of the bonds of Home Owners' Loan Corporation' '' and to release all claims against the said property; (3) that ''Gurde M. Johnson and A. Marie Johnson did accept the bonds of said corporation in full satisfaction of their claim as aforesaid''; (4) ''that said notes were executed without consideration and by reason thereof the same are null and void''; (5) that ''said notes and second deed of trust are of no value by reason of the 10 year statute of limitations in Missouri  *  *  *''; and (6) ''that said second deed of trust taken in connection with such financing vitiates the intent and purpose of the Home Owners' Corporation Act of 1933 and as a result is contrary to public policy and void  *  *  *.''

The answer of respondent A. Marie Johnson admitted her ownership of the notes secured by the second deed of trust and that she was threatening foreclosure. She alleged that payment of the two interest notes mentioned, charged that appellants had, in 1940, made a further payment and promised and agreed to pay the other notes, pleaded the five year statute of limitations as a bar to any recovery against her for the alleged fraud, denied want of consideration for the notes in question, alleged that the notes were executed for a good and valid consideration and that appellants were estopped to assert

the bar of limitations. She prayed the court "to give this defendant a judgment against plaintiffs for the amount of said second deed of trust of principal and interest and for attorney's fee and all other expenses caused by the filing of this suit * * *."

A review of the evidence on the issue of fraud is not required, since appellants now insist that "the present is not such a case"; and that "this action is founded on the violation of the Home Owners' Loan Act of 1933, public policy, want of consideration and coercion."

There was conflicting oral evidence concerning an alleged payment of $4.00, on or about July 1, 1940, by appellants to an agent of the Johnsons for application on the entire indebtedness evidenced by these notes. Credit for this sum was distributed on the notes. The trial court resolved the conflicts in the evidence by a finding that the payment was made "sometime during the [419] month of either June or July, 1940"; and that the notes, evidencing "the entire debt," were not barred by the 10 year statute of limitations.

There was conflicting evidence as to whether appellants or the Johnsons had first suggested refinancing the indebtedness through the HOLC and as to whether or not respondent A. Marie Johnson was present with appellants and Mr. Johnson when the HOLC loan was closed and when the second deed of trust and notes were executed. Mrs. Johnson disclaimed any personal contact with these matters and the general finding in her favor sustains her testimony on that issue. Appellants' evidence tended to show that nothing was said in the HOLC office about a second deed of trust, or prior to the closing of that loan, but that, as soon as the parties "got downstairs," Mr. Johnson said he had some papers for appellants to sign "to complete the Home Owners' loan," and the parties proceeded to a place on Chestnut street where the second deed of trust and notes were executed. Respondents' evidence tended to show that the second deed of trust was not signed and acknowledged by appellants until April 7, 1934. The court found that the evidence was "insufficient to show any fraud, misrepresentation, duress or coercion on the part of * * * A. Marie Johnson."

The evidence on behalf of both the appellants and the respondents shows that no new consideration was paid or given for the second deed of trust and notes in question. Appellants testified that they owed the Johnsons nothing after the HOLC loan was closed, but that the $1435 note represented the difference between the HOLC bonds and the debt to the Johnsons. Mrs. Johnson testified that the $1435 note represented "the deficit between the HOLC loan and ours. * * * Q. I say, adding the $1435 to the amount of the HOLC bonds, that would pay you and your husband in full? A. Yes. Q. For the the amount they owed you? A. Yes." Mrs. Johnson further testified that her husband died July 5, 1947 and that she now owned the notes secured by the second deed of trust. She

and her husband had both owned the notes secured by the original first and second deeds of trust securing the balance of $11,500. She said that she and her husband never agreed at any time to take less than the amount due them. She admitted that she was present when Mr. Kramer consulted her husband about allowing "the HOLC to take over our loan on his house, the $11,500." Her husband advised Mr. Kramer it "would be a very good idea * * * would be better for you and it would be better for me." She said "we understood they were taking over our loan in full." She saw the second deed of trust and notes after April 7, 1934 and she had had them in her possession since that time. She said that she did not authorize her husband to execute any instruments in reference to the HOLC loan in her behalf and did not see any of the instruments from the HOLC. None were offered to her by her husband for her approval. . She didn't know what happened down at the HOLC office, but she remembered "what he (her husband) said when he came home." Her husband handled all of the business in reference to the Kramers. Any payments that were made on that account, other than the $4.00 paid to their agent Jones, were made to her husband. She at no time denied the receipt and retention of both the HOLC bonds and the second deed of trust and notes, and the trial court found that she (by survivorship) was now "the full, complete and exclusive owner of" the notes in question. The trial court also drew the conclusion from her testimony that she and her husband had received the HOLC bonds. The court found "that the acceptance by Mr. and Mrs. Johnson and now the acceptance by A. Marie Johnson, the remaining defendant, of the sum of $10,568.03 was only a credit accepted by her to be charged against the full amount due, and did not in any way discharge or pay off the balance that was due on the original obligation of the plaintiffs to A. Marie Johnson and Gurde Johnson. * * * The parties, by accepting in this case the amount of the Home Owners' loan as a credit on the original debt, didn't discharge the remainder of the unpaid balance [420] of that original debt. That they did not intend to do so is shown by the conduct of all the parties * * *."

Respondents further offered the testimony of two former employees of the HOLC whose testimony tended to show that they were familiar with the rules and regulations of the HOLC and the HOLC manual governing the making of loans. They testified that there was nothing in these rules and regulations, nor in the directives from Washington, D. C., interpreting the rules and regulations, which would have prevented the Johnsons from taking notes and a second deed of trust for the balance of the indebtedness not covered by the HOLC bonds, that is, so long as the total indebtedness against appellants' property did not exceed the appraised value thereof. The consent of the HOLC was not required for the mortgagee to take a second deed of trust.

The notes and second deed of trust being for a sum less than the difference between the HOLC loan and the appraised value of the property and further providing for no principal payment within three years complied with existing HOLC regulations. One witness said that an examination of the HOLC's "closing account" of appellants' loan showed that "the mortgagee was privileged to take back at least $2100 over and above the $10,568" without violating the rules and regulations. He admitted that the "closing account" showed on its face that the Home Owners' Loan Corporation was refinancing the property and taking up deeds of trust that had been held by Gurde M. Johnson and A. Marie Johnson. He denied that the HOLC manual provided that the taking of such a second deed of trust was a part of the closing of the HOLC financing, or that such a deed of trust had to be known to the corporation. He said, "that was simply a matter between the mortgagee and the mortgagor"; and that "the only consent that the mortgagee signed was that he was willing to take the Government Treasury bonds at face value of the amount of the mortgage that was going to be incurred by the HOLC, from the mortgagor." He further testified that the mortgagees' consent to take bonds in the form shown by plaintiffs' exhibit 4 and the authorization for delivery of HOLC bonds in the form shown by plaintiffs' exhibit 2 were the forms required by the HOLC in and at the conclusion of HOLC refinancing.

There was no evidence from which an inference could be drawn that the HOLC, its officers and agents, consented to the execution of the second deed of trust and the notes secured thereby, or knew of their existence prior to July 11, 1941 or then knew that the notes evidenced any part of the original indebtedness existing prior to the issuance of the HOLC bonds. Respondents' evidence tended to show that the second deed of trust, *dated March 10, 1934*, was not recorded until June 9, 1934.

On the evidence reviewed, the trial court found the issues for defendants-respondents, as stated, and in its findings of facts and rulings of law the court further held that there was no consideration for the release of any part of appellants' indebtedness to the Johnsons; that the notes for the balance of the original obligation were valid obligations; and that respondent Johnson was entitled to recover thereon. The court also held that appellants were entitled to no relief in equity because they had had full notice of all facts now relied upon and of the existence of the notes and second deed of trust (now sought to be cancelled) since June 9, 1934, when the deed of trust was duly recorded; and that any right to equitable relief was barred "on the ground of laches upon their part." A temporary injunction theretofore issued was dissolved and a permanent injunction denied.

Respondents have moved to dismiss the appeal for failure of appellants' brief to comply with Rule 1.08. While the brief is subject to

some criticism, we do not consider its defects sufficient to justify the dismissal of the appeal. The motion to dismiss is overruled.

Appellants assign error (1) on the dismissal of their petition and the denial of the relief sought; (2) on the holding that equitable relief is barred by laches; (3) on the holding that there was consideration [421] for the notes; (4) on the exclusion of evidence; and (5) on the granting of judgment on the cross-action.

■ This is an equity case and on appeal we try it de novo, giving due deference to the findings of the chancellor. Bullock v. E. B. Gee Land Co., 347 Mo. 721, 148 S. W. (2d) 565, 567; Niehaus v. Madden, 348 Mo. 770, 155 S. W. (2d) 141, 145.

■ ■ We think the trial court erred in its ruling as to laches. No such defense was pleaded. Section 847.40 Mo. R. S. A. 1939, 509.090 R. S. 1949. No evidence appears in the record to sustain such a defense, since no facts and circumstances were shown as happening since the execution of the second deed of trust and notes, which would make it inequitable for appellants to now present their action to enjoin foreclosure of the deed of trust or to ask for the cancellation of the said notes. See Harrell v. Surface, 349 Mo. 370, 190 S. W. (2d) 939; Coleman v. Crescent Insulated Wire and Cable Co., 350 Mo. 781, 168 S. W. (2d) 1060, 1066.

■ Appellants contend that the court erred in excluding plaintiffs' exhibits 2 and 4. It is contended that these exhibits were executed by Mr. Johnson; that Mr. Johnson was authorized to act for Mrs. Johnson; and that the exhibits were duly authenticated and attested by the official custodian of the HOLC records. It is admitted that the HOLC is a government agency. Plaintiffs' exhibit 4 is entitled "Mortgagee's consent to take bonds." It contains a recital with reference to the Johnsons' claim in the sum of $11,500, which was secured by deeds of trust against appellants' property, and a recital concerning appellants' application to the HOLC for refinancing, and it then states: "* * * the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned, the sum of $10,568.03 less taxes, face value of the bonds" of the HOLC and "thereupon to release all claims of the undersigned against said property." The document purports to be signed by G. M. Johnson and A. Marie Johnson. No proof of signatures, execution or authority to execute was made and "the execution of the written instrument being denied under oath" the document was excluded from evidence. It was also excluded as to defendant Gurde M. Johnson on the ground it would be "proving a case against a dead man against whom" the case had been dismissed. Plaintiffs' exhibit 2 is entitled, "Authorization for Delivery of Home Owners' Loan Corporation 4% Bonds Due July 1, 1951" and recites that for value received G. M. and A. Marie Johnson are entitled to HOLC bonds in the amount of $10,200; that the loan to the Kramers

has been duly and regularly closed and the loan secured and that the Johnsons are entitled to have the bonds delivered "upon surrender of this authorization and upon proper identification." Under date of March 10, 1934, this authorization for delivery through the Mississippi Valley Trust Company of the "above mentioned bonds" purports to be signed "G. M. and A. Marie Johnson by G. M. Johnson her agent." The "signature of authorized recipient of bonds" appears in the same form. No proof of agency, authorization or signatures was made and the exhibit was excluded from evidence on the ground "there is no showing of the execution, and the signatures read in the offer is an attempt to prove agency by the writing of the agent * * *." The trial court also pointed out that agency could be ratified or the principal estopped to deny it. The court said: "If there is some estoppel or if there is some consideration shown for accord and satisfaction or release or something like that, I am not excluding that * * *." No such proof was immediately made, but respondent A. Marie Johnson subsequently testified as hereinbefore stated.

Respondents insist that the two exhibits were properly excluded; that Mrs. Johnson did not consent to accept bonds in full settlement of her claim; that there was no proof that she signed the exhibits, agreed upon their contents or authorized Mr. Johnson or anyone else to sign them for her; and that, since the exhibits were not admitted in evidence and were not considered by the trial court when it decided the case and entered its [422] judgment, the exhibits are not now before this court on this appeal. Both exhibits are fully set forth in the transcript of the record and they are presented on this appeal, but "* * * the exclusion of competent testimony or the admission of incompetent testimony by the chancellor is of no great concern on appeal in an equity case, if the evidence is so preserved that we can have it all before us, for we can then consider it for what it is worth and can admit or exclude it ourselves." McKee v. Downing, 224 Mo. 115, 135, 124 S. W. 7; Middleton v. Reece, (Mo.), 236 S. W. (2d) 335; Bowman v. City of Kansas City, 361 Mo. 14, 233 S. W. (2d) 26. In view of the testimony of respondent Johnson and her witnesses, which we have fully set out, we think this court must consider the excluded exhibits for the purpose of this appeal and it is immaterial that the trial court may not have erred in excluding the exhibits at the time they were excluded.

The record shows that Mr. and Mrs. Johnson, husband and wife, were living together and that together they owned the claim against the Kramers and the Kramers' property. Mrs. Johnson knew that her husband was handling, and had always handled, the financial matters with the Kramers. She knew that a refinancing of the indebtedness through the HOLC was contemplated. She knew when it was concluded. She and her husband accepted the HOLC bonds

and the second deed of trust and notes in lieu of the original notes secured by the original first and second deeds of trust. Her own witness testified that execution of the forms shown by exhibits 2 and 4 were required for HOLC refinancing. Mrs. Johnson not only knew of the refinancing at the time, but she accepted and retained the benefits thereof. Exhibits 2 and 4 were negative photostatic copies of original records of the HOLC and they were duly certified under the seal of the corporation. The rejected exhibits bear the same loan number, Loan Number 23-A-1482, as the disbursement sheet received in evidence covering the HOLC loan to the Kramers. Further, it should be said that, upon other documents previously offered and received in evidence before exhibits 2 and 4 were finally excluded, there were signatures which the evidence tended to show were made by Mr. Johnson and these signatures were before the court for comparison with the questioned signatures of Mr. Johnson on exhibits 2 and 4. The authenticity of the signatures purporting to be by Mr. Johnson on these exhibits was not questioned by any direct evidence. Prima facie all of these signatures appear to have been made by the same person. Of course a court of equity is not bound by the legal conclusions expressed by the several witnesses as to the authority of the agent Johnson or the legality of the second deed of trust under the facts shown.

Appellants rely on the law as declared by this court in Cannon v. Blake, supra, 182 S. W. (2d) 303, where this court ruled a quite similar case and held that, where the HOLC was not advised of the intention of the holder of a prior lien to take a new note secured by a second deed of trust in addition to the bonds of the HOLC, which bonds were used to discharge the original mortgage lien, the new note and second deed of trust were invalid as against public policy and in contravention of the Home Owners' Loan Act of 1933, 12 U. S. C. A. Sec. 1463(d). In that case there was no evidence introduced to show that the HOLC was advised that the original lien holder was not accepting the bonds of the HOLC "in full settlement" of her claim in accordance with a previously filed consent to take bonds. The court further held that, where the holder of the original lien on the property received and retained a portion of the bonds of the HOLC issued pursuant to a plan of refinancing of the home owners' indebtedness in which certain individuals assumed to act for the original lien holder, such lien holder was estopped to claim that the acts of such persons purporting to act for her were in fact unauthorized. The applicable law was fully reviewed in that opinion, it has been re-examined and is now approved, but repetition here is not required. Reference is had to that opinion.

Respondents seek to avoid the holding in the Cannon case on the ground that in [423] the Cannon case "the holder of the second deed of trust signed a mortgagee's consent to take bonds," while "in the

case at bar there is absolutely no proof at all that defendant A. Marie Johnson signed exhibit 4, the consent to take bonds in full settlement of her claim." It is on the basis of this fact that respondents insist that "no case was proven against this defendant (Mrs. Johnson) in violation of the HOLC rules and regulations." Respondents further contend that the Cannon case "only ruled that the HOLC must be advised of the second deed of trust where the participating lien holder has agreed to take bonds in full settlement of his claim."

If Mr. Johnson, in fact, signed exhibits 2 and 4 on behalf of himself and wife, and it appears that he did so, respondent Johnson is now estopped on the basis of her own testimony to make the contention her signature to the consent was unauthorized. Cannon v. Blake, supra. It appears from this record that the making of a HOLC loan on the Kramer property was concluded and that prima facie it was concluded by reason of the execution and delivery of exhibits 2 and 4, which exhibits purport to have been executed by the Johnsons or by Mr. Johnson on behalf of himself and his wife. The questioned documents are in the file and the fact that the loan was closed would prima facie tend to show that all legal and necessary requirements were complied with. The first and second liens held by the Johnsons were replaced by a first lien to the HOLC and a second lien in favor of the Johnsons. It clearly appears that in his handling of the Kramer matters Mr. Johnson acted with the full knowledge and consent of his wife and that they accepted and retained the benefits of HOLC refinancing.

Respondents cite Krause v. Swanson, 141 Neb. 256, 3 N. W. (2d) 407; McMillan v. Palmer, 198 Ark. 805, 131 S. W. (2d) 943 and other cases which this court refused to follow in the Cannon case.

The issue of consideration or no consideration for the notes and second deed of trust is not the essential and decisive question and need not be ruled. The essential question we believe to be whether or not under all the facts of this case the notes and second deed of trusts were invalid as against the public policy evidenced by the Home Owners' Loan Act of 1933, Sec. 4(a), 12 U. S. C. A. Sec. 1463(d). This act in part provides: "In any case in which the amount of the face value of the bonds exchanged plus accrued interest thereon and the cash advanced is less than the amount the home owner owes with respect to the home mortgage or other obligation or lien so acquired by the Corporation, the Corporation shall credit the difference between such amounts to the home owner and shall reduce the amount owed by the home owner to the Corporation to that extent." If, after a consent in the form of exhibit 4 has been filed and a loan closed on such basis, the holder of the original indebtedness may take the notes of the home owner for the difference between the original indebtedness and the bonds, without the knowl-

1098

edge and consent of the HOLC, the express purpose of the act would in part be defeated. Cannon v. Blake, supra.

While the trial court did not err in excluding the exhibits when they were excluded, nevertheless at the close of all the evidence, when it appeared prima facie that the exhibits were then competent and admissible, we think that a court of equity could not disregard them in determining the merits of the cause. On the face of this record it appears that the decision was for the wrong party. It is possible, however, that the facts have not been fully developed. With the exhibits excluded from evidence, respondents were not required to proceed further with reference thereto. In such situation we think the judgment should not be reversed without a remand for a new trial of the issues involved. See McGaugh v. City of Fulton, 356 Mo. 1122, 205 S. W. (2d) 547, 552; Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S. W. (2d) 471, 480. Appellants may also amend their pleadings if so advised. Other assignments of error need not be considered.

The judgment is reversed and the cause remanded. All concur.