Harry L. SHINER and Myrtle F. Shiner, Respondents,

v.

Ethel POLK, by her Guardian and Curator, Martha T. Corn, Martha T. Corn, Curator of Ethel Polk, and Arvid Owsley, Sheriff of Jackson County, Missouri, Appellants.

No. 49518.

*Supreme Court of Missouri,*

Division No. 2.

April 8, 1963.

Ennis, Browne & Martin, Allan R. Browne, Kansas City, for appellants.

Ayers Blocher, Kansas City, for respondent.

EAGER, Presiding Judge.

This suit was filed upon the theory that the holder of a first note and deed of trust had automatically merged that lien into the legal title by taking a warranty deed from the record owners. Plaintiffs were the holders of a second note and deed of trust and, claiming that their second deed of trust thus became a first lien, they sought to enjoin foreclosure of the first. At the trial plaintiff Myrtle F. Shiner (the husband having died after suit was filed) was permitted to amend the petition by interlineation so as to allege an *agreement* by defendant Polk to cancel her note and deed of trust. The property covered by these

liens is a rather dilapidated house on the east side of Kansas City, which is obviously not worth the remaining balance due on the first deed of trust. And the rather sketchy evidence of value so shows.

More specifically, on May 8, 1956, James and Lucy Lee Dodson executed a note for $4,650 and a first deed of trust on the south forty feet of Lots 1 and 2, except that part of Lot 1 on College Avenue, in Block 2, Walnut Grove, a subdivision in Kansas City, Missouri. Those instruments later became the property of Ethel Polk, defendant and appellant herein. She was then approximately 70 years old and was 75 at the time of trial in July 1961. On March 5, 1959, the Dodsons executed a note for $2,000 and a second deed of trust on the property; these later became the property of plaintiffs, apparently in joint ownership. That deed of trust recited that it was "subject to an existing First Deed of Trust and Note, now of record." Both the first and second notes were payable in monthly installments. Apparently the payments on Mrs. Polk's note ceased about the middle of 1959, and those on the other note about January 1960. The balance due on the first after the last payment was $3,638.68 plus interest. On February 23, 1960, the Dodsons executed and delivered to Mrs. Polk as grantee a warranty deed to the property, "Subject to First and Second Deeds of Trust and Notes now of record." This deed was duly recorded, as were the prior deeds of trust. The transcript shows that this transaction was handled for Mrs. Polk by real estate agents who were "helping" her with this property; one of them prepared the warranty deed and took it to the Dodsons for execution. The record does not show that Mrs. Polk was present at the time, or when she had last talked to the Dodsons. In fact, nothing is shown as to what transpired when the deed was executed and delivered. It is obvious that the note of Mrs. Polk was not surrendered to the Dodsons, for she had possession of it months thereafter. Mrs. Polk admittedly paid the Dodsons $360 at or about the time of the execution of the deed,

"for their interest." In the fall of 1960 Mrs. Polk requested one of these real estate agents, so he testified, to institute fore-closure on her note. The original trustee named refused to act, and a request was made of the Sheriff. Publication was instituted and run with the sale set for November 4, 1960. On November 2, this suit was instituted and a restraining order was issued on the same day.

We omit recitals of the evidence of certain circumstances and conversations and also concerning a written statement taken from Mrs. Polk, since these bear largely upon the issue of a supposed agreement by Mrs. Polk to cancel her note. In the view we take of the case, a consideration of that evidence will not be necessary. A guardian and curator was appointed for Mrs. Polk by the Probate Court of Jackson County on February 15, 1962, about seven months after the trial. That court then found her to be incompetent. The guardian and curator was later made a party in the present case.

We first look to see what the issues really are. The petition alleges that a sale under foreclosure of the first deed of trust would be void and "would place a cloud upon the interest of these plaintiffs * *." It does not ask for any adjudication of title, nor does it claim title in plaintiffs. Mrs. Polk's title was not questioned, but rather was affirmed; it was alleged, however, that she had subsequently conveyed to one Silvers, who was originally named as a party defendant but never appeared. Plaintiffs, not claiming title, merely sought injunctions, temporary and permanent, an order declaring their deed of trust "to be a first lien," and general relief. Defendant Polk filed her answer in which she made certain admissions and denials, alleged that plaintiffs had an adequate remedy at law, supposedly by a quiet title suit, and sought to have the restraining order dissolved and the petition dismissed. She also prayed for damages. Defendant sought no adjudication of the title, since it had not been placed in controversy.

The court entered its decree on March 26, 1962. Therein it found for the plaintiff generally, and also found: that Mrs. Polk had agreed to cancel her note and deed of trust when she "purchased" the property in February 1960, as a part of the consideration for the deed, but that she had failed to cancel them; that the note of plaintiff was "now a first lien" upon the real estate. The judgment was that the note secured by the first deed of trust be cancelled, that the second deed of trust was a first lien on the property, that the defendants were perpetually enjoined from foreclosure and that Mrs. Polk's claim for damages was denied. This judgment did not proceed upon any theory of automatic merger by reason of a purchase of the title by the holder of the first lien. After the overruling of a motion "For Rehearing and New Trial" defendants appealed.

Actually, the sole issue made here was whether, by merger or agreement to cancel, the first lien was eliminated and the second lien became a first. At the trial the contention of an automatic merger seems to have been totally abandoned in view of the outstanding interest represented by the second lien and other considerations indicated in the cases. Scott v. Hill, 330 Mo. 490, 50 S.W.2d 110; Saline County v. Thorp, 337 Mo. 1140, 88 S.W.2d 183; Collins v. Stocking, 98 Mo. 290, 11 S.W. 750; Wilson v. Vanstone, 112 Mo. 315, 20 S.W. 612; Seiberling v. Tipton, 113 Mo. 373, 21 S.W. 4. The issue tried was largely, if not solely, whether Mrs. Polk had agreed to cancel her note and deed of trust when she took the warranty deed. This was directly denied, and more or less directly asserted, but we refrain from commenting on that evidence.

We are met immediately with a question of our jurisdiction. This writer has noted several times that a case might well have been written on the merits with less difficulty than on the jurisdictional question, but this is a court of limited jurisdiction, Art. V, Sec. 3, Constitution of Missouri 1945, V.A.M.S., and we are not privileged to extend our jurisdiction in any respect. The asserted ground of jurisdiction here is that title to real estate is involved.

▉ In order to establish jurisdiction on that ground it is not enough that title may be indirectly affected; a question of title must be directly involved, must be an issue, and the judgment should be one affecting the title in some way. Reece v. Van Gilder, Mo., 272 S.W.2d 177; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616; Boesel v. Perry, Mo., 262 S.W.2d 636. This court has held, in the same connection, that suits to enforce or enjoin the enforcement of liens, valid in their inception, or to adjudicate liens, do not involve title to real estate. Boesel, supra. Rust Sash & Door Co. v. Gate City Bldg. Corp., 342 Mo. 206, 114 S.W.2d 1023; Stock v. Schloman, 322 Mo. 1209, 18 S.W.2d 428; Rust v. Geneva Investment Co., Mo., 124 S.W.2d 1135; Simmon v. Marion, 358 Mo. 888, 217 S.W. 2d 537. As stated in Boesel, supra, at 262 S.W.2d 636, loc. cit. 637–638: "Suits to enforce or enjoin the enforcement of liens against real estate, admittedly valid in their inception, do not involve title to real estate so as to confer appellate jurisdiction here. Farrell v. Seelig, Mo.Sup., 19 S.W.2d 648, 650 [3]; Brutcher v. Fitzsimmons, 343 Mo. 547, 122 S.W.2d 881, 882; Heman v. Wade, 141 Mo. 598, 601, 43 S.W. 162, 163. There is no claim that the deed of trust was void ab initio as in Hendrix v. Goldman, Mo. Sup., 92 S.W.2d 733 [1], and other like cases."

As thus indicated there are cases from this court which hold that we do have jurisdiction, and that title is involved, if the validity of the lien, *ab initio,* is in issue. Jurisdiction was accepted on that theory in the following cases: Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297 (lack of consideration); Cannon v. Blake, 353 Mo. 294, 182 S.W.2d 303 (violation of Home Owners' Loan Act); Kleber v. Carlos, Mo., 202 S.W.2d 865 (fraud or misrepresentations); Phillips v. Phoenix Trust Co., 332 Mo. 327, 58 S.W.2d 318 (authority

of a guardian); Woodbury v. Connecticut Mutual Life Ins. Co., 350 Mo. 527, 166 S.W.2d 552 (probably fraud); Kramer v. Johnson, 361 Mo. 1085, 238 S.W.2d 416 (violation of Home Owners' Loan Act).

In Peters v. Kirkwood Federal Savings & Loan Ass'n, 344 Mo. 1067, 130 S.W.2d 507, the court said on this subject, at loc.cit. 508–509: "There is a distinction (affecting appellate jurisdiction) made in the decisions between a suit to set aside a deed of trust on the ground that it is void ab initio, and a suit in which it is sought to prevent enforcement on the ground that the right to enforce has been lost by something happening after execution." It then set out several illustrations of the "ab initio" theory. In that case, however, the court concluded that no jurisdiction existed since discharge and payment was the real issue. It is obvious, of course, that a question of payment or no payment merely involves a monetary fact issue, and not any real question of title. Similarly, an explanation was offered in the case of Munday v. Austin, 358 Mo. 959, 218 S.W.2d 624, at loc. cit. 626, where the court said: "From these decisions it will be seen that where the essential and inherent validity of the mortgage itself is in dispute, title is involved. In other words, the mortgage is regarded as a part or segment of the title, constituting a cloud on the title if it is invalid. But if the dispute is merely over the foreclosure of the mortgage or the indebtedness secured thereby, it does not involve title."

Two of our cases came very close to the present case on the jurisdictional facts. In both, jurisdiction was denied. The first is Boesel v. Perry, Mo., 262 S.W.2d 636, already mentioned. There, suit was filed to cancel a deed of trust and to enjoin foreclosure. The facts were that plaintiffs, the makers of the note and owners of the property, had taken a quit claim deed from the holder of the note and deed of trust in an effort to improve their title. It was contended later (in the suit) that the quit claim had also released their note and deed of trust. Jurisdiction was denied because this contention, based on subsequent occurrences, did not affect the validity of the note and deed of trust *ab initio*. The court also noted, loc. cit. 638: "Plaintiffs' prayer to cancel the deed of trust is but an effort to put a judicial end to the originally valid lien of said deed of trust."

The case of Morgan v. York, 337 Mo. 1076, 88 S.W.2d 146, was discussed in Boesel, supra. There, suit was filed to enjoin a foreclosure and to cancel certain notes and a deed of trust. It was claimed that the notes and deed of trust had been released by a *merger* into the legal title, when the owner of the property bought them and later resold them. The court discussed at some length the phases of jurisdiction which we have been discussing, and held that no question of title was involved on these issues. The court said, in part, 88 S.W.2d loc. cit. 150: "As stated, supra, plaintiff's title was not questioned nor was any attack made upon the validity of the deed of trust. Primarily the pleadings seek the judgment of the court as to whether or not the deed of trust, admittedly valid in its inception, is still a lien; that was the sole matter at issue and the only thing determined and adjudged by the trial court."

We thus see that on plaintiff's original theory of a *merger,* our authorities prevent us from accepting jurisdiction. In passing, we note that it may be a little difficult to grasp the basic reasoning behind the stated principle that nothing which occurs after the execution of the note can create a title controversy. Probably it lies in the thought that only defects arising "ab initio" can cause the lien, a segment of the title, to be essentially and *inherently* invalid.

▮ So far as the present case is concerned, however, the denial of jurisdiction can hardly be questioned. Plaintiff amended her petition so as to allege that Mrs. Polk had agreed to cancel her note as part of the consideration for the warranty deed. The case was tried and decided on that issue. Such an issue is very closely akin to one of

*payment,* and all the authorities agree that a lien controversy on the question of payment or no payment does not give this court jurisdiction.

Title to realty is not involved and the case will be transferred to the Kansas City Court of Appeals.

All of the Judges concur.