Calvin G. SCHOENE and Charles M. Turlington, a Partnership d/b/a S-T Enterprises, Respondents,

v.

George HICKAM, Sheriff of Jasper County, Missouri, and Otto A. Owen and Elizabeth L. Owen, Appellants.

No. 51189.

Supreme Court of Missouri,

Division No. 1.

Dec. 13, 1965.

Rehearing Denied Jan. 10, 1966.

Robert E. Seiler, Joplin, for respondents; Seiler, Blanchard & Van Fleet, Joplin, of counsel.

John R. Martin, Joplin, for appellants; Richart, Titus & Martin, Joplin, of counsel.

HOUSER, Commissioner.

■ Otto A. Owen commenced foreclosure proceedings on a motel property at Joplin, Missouri under a deed of trust executed by plaintiffs to secure their promissory note for $14,500. The note and trust deed were given for services rendered by Owen as a real estate broker in negotiating an exchange of plaintiffs' 1,200 acres of land located in Colorado for the motel property in Missouri. Plaintiffs brought suit against Owen and his wife, the payees of the note, and the local sheriff who was named trustee in the deed, to enjoin foreclosure and (1) to declare the deed of trust and note void and unenforceable as arising out of an illegal transaction or in the alternative (2) to declare that plaintiffs are not in default on the note and deed of trust. The circuit court found the note and deed of trust invalid and unenforceable and enjoined the foreclosure. Defendants appealed. Title to real estate is directly involved and this court has jurisdiction, since the ultimate issue is whether the instruments were void ab initio. Kramer v. Johnson, 361 Mo. 1085, 238 S.W.2d 416 [1]; Cannon v. Blake, 353 Mo. 294, 182 S.W.2d 303.

We find these to be the pertinent facts: Owen, a resident of Phoenix Arizona, advertised and held himself out to the public and represented himself to plaintiffs Schoene and Turlington as a real estate *broker.* In the course of his real estate transactions he had performed many of the acts recognized by § 32–2101[1] of the Arizona Revised Statutes Annotated as those of a real estate broker. He did business generally as a sole trader, occupying his real estate office by himself. He had been in the real estate business since 1960. He had arranged the exchange of properties in California, Colorado and Missouri, in fact all across the United States from New York to the Pacific Ocean. Owen was a licensed real estate *salesman* but was not a licensed real estate *broker* in Arizona at the times in question. As a licensed real estate salesman in the transaction in question Owen was not employed or compensated by any licensed real estate broker. He did not hold a nonresident real estate broker's or salesman's license in Colorado or Missouri. In March, 1963 Owen was employed by plaintiffs in Arizona as a real estate broker to sell or exchange plaintiffs' 1,200 acre tract of land in Colorado. There was no mention of Owen acting as agent or in any capacity other than for himself. It was intended that the contract be performed and it was in fact performed in Arizona. Acting under his contract of employment Owen advertised the 1,200 acres in newspapers in the Phoenix, Arizona area, but not in Colorado or Missouri. He at no time left the State of Arizona to show the properties in Colorado or Missouri. He did nothing personally within the borders of those states to promote the deal in any way. He did give plaintiffs the information required by them to locate and examine the motel property in Joplin. Through Owen's efforts a contract was eventually entered into between plaintiffs and William Stonecipher and wife for the exchange of the 1,200 acres of Colorado land for the motel property in Joplin, Missouri. The transaction was consummated in the office of plaintiffs' attorney in Scottsdale, Arizona. In order to collect compensation for his services as a real estate broker in negotiating the trade Owen prepared a separate written commis-

1. § 32–2101 defines a real estate *broker* as a person other than a salesman who for another for compensation lists for sale, sells, buys, exchanges or offers, attempts or agrees to negotiate a sale, exchange, purchase, or rental of any interest in real estate; who advertises or holds himself out as engaged in the business of selling, exchanging, or buying of real estate; who assists in or directs the procuring of prospects or the negotiation or closing of any transaction which results in the sale, exchange, etc. of real estate. The same section defines a real estate *salesman* as "a person engaged by or on behalf of a licensed real estate broker to perform any act or transaction included in the definition of real estate broker."

sion agreement. The parties to this agreement were Owen and plaintiffs. It was prepared in Arizona and was signed for the partnership of Schoene and Turlington by Calvin G. Schoene in Arizona. It provided for the giving by plaintiffs of a promissory note for $14,500 to Owen and his wife to be secured by a deed of trust on the motel in Missouri. A note and deed of trust were prepared by Owen pursuant to the agreement. They were signed by plaintiffs in Maricopa County, Arizona. The note called for installment payments. The first payment was not made but several subsequent payments were made by plaintiffs and accepted by Owen. There is a dispute whether the first payment was waived but we are not concerned with this, for we do not reach the question whether plaintiffs were in default when Owen instituted foreclosure proceedings.

Plaintiffs' theory below as to the illegality of the transaction, as reflected by the pleadings, evidence and memorandum opinion of the trial judge sustaining plaintiffs' position, was that defendant Owen illegally engaged in the business of a real estate broker by negotiating an exchange agreement and entering into a commission agreement in the State of Colorado involving an illegal commission on the exchange of land in Missouri, without being licensed either in Colorado or in Missouri to engage in real estate transactions, contrary to § 339.020, V.A.M.S. and Colo.R.S. § 117–1–1.

■ Appellants' brief makes two points: "The judgment is contrary to the law under the evidence in this case" and "The judgment is against the weight of the evidence." Neither point preserves anything for appellate review. Both points violate the rules of appellate practice because of their generality. Instead of sustaining respondents' motion to dismiss the appeal for violation of the rules, however, we are making an exception, in the exercise of our discretionary powers. It unmistakably appears from the argument portion of appellants' brief that appellants' principal point is that the court erred in ruling the note invalid and the trust deed unenforceable as an illegal transaction on the basis that Owen violated the licensing laws of Colorado[2] and Missouri,[3] in that Owen did not make any contract to act as a real estate broker in either of those two states and did not in fact act as a real estate broker in Colorado or Missouri, and erred in not ruling that Owen was licensed as a real estate broker in Arizona, where the contract of employment was entered into; that it was intended that the employment contract be, and it actually was, performed in Arizona and that the commission was legally earned under a valid Arizona employment contract. In support of this position appellants contend that the validity of the employment contract is governed by the law of the place where it was made (Arizona) and not by the law of the place where the real estate is located (Colorado and Missouri); that Owen did not engage in the real estate business in either of those two states, but stayed at all times within the State of Arizona, where he was licensed; that as a licensed real estate broker Owen procured a purchaser ready, able and willing to purchase on terms agreeable to plaintiffs; that he earned his commission under the Arizona law and was given a valid note and deed of trust therefor; that recovery on these instruments cannot be refused on the ground that he failed to comply with the licensing requirements of Colorado and Missouri, which should not be applied because Owen did not act as a broker in those states; that the note and deed of trust should be enforced by the courts and processes of Missouri, and that to do so will not violate the public policy of Missouri.

In their brief respondents make the point that the note and trust deed are invalid but they expand their reasons and grounds beyond those urged upon the trial court. In

2. Colo.R.S.1963, §§ 117–1–1, 117–1–2, 117–1–5(6), 117–1–6, 117–1–8, 117–1–11, 117–1–17, 117–1–19.

3. §§ 339.010, 339.020, 339.090, 339.100, 339.160, 339.170, V.A.M.S.

the Supreme Court, while not abandoning their contention that the Colorado and Missouri licensing laws are applicable to Owen and that he violated them, respondents have added a new and different reason for affirmance, namely, that throughout his dealings with plaintiffs Owen acted as a real estate broker but that he was *not licensed as a broker in Arizona,* and that under Arizona statutes it was unlawful for him to transact this business as a broker without first obtaining an Arizona broker's license; that it was unlawful for Owen (holding only a real estate salesman's license) to accept employment and compensation from anyone other than a licensed broker, and therefore Owen could not legally enter into an employment contract or a commission agreement with plaintiffs or take a note and deed of trust from them as a commission.

■■■ In oral argument appellants vigorously objected that whether Owen was licensed in Arizona as a broker was not an issue in the trial below and that it is too late to raise this question for the first time on appeal, citing Welch v. McNeely, Mo. App., 269 S.W.2d 871[2]; Haire v. Stagner, Mo.App., 356 S.W. 305; Stoll v. First Nat. Bank of Independence, 345 Mo. 582, 134 S.W.2d 97, 98[1, 2], and other cases, for the proposition that an appellate court will review a case only upon the same theory upon which it was submitted in the trial court and that a party may not shift his position on appeal. Appellants are not entitled to the benefit of this rule. There has been no change in respondent's ultimate contention that the note is invalid and that the trust deed is unenforceable. The only change is a change in the reasons for the illegality, but the facts which provide the basis upon which the new reason is asserted are undisputed. Owen himself testified on cross-examination that he was licensed only as a salesman and did not hold a broker's license at the times in question; that he personally entered into the employment contract directly with plaintiffs; that he prepared and forwarded the written commis-

sion agreement between Owen and plaintiffs, and that he prepared and attended to the execution of the note and trust deed which names Owen (not some licensed broker who employed Owen as a salesman) and Owen's wife as the direct payees and beneficiaries. The documents plainly indicate that Owen was acting as a principal, as a broker, and not as an employee or salesman for and on behalf of another who was licensed as a broker. These admitted and undisputed facts preclude a recovery by Owen, as we shall presently develop, and upon a new trial would necessitate reentry of the same judgment. Where the new issue involves undisputed facts the appellate court may proceed to determine the matter without the necessity of a remand. State of Mo. v. Keiter, Mo.Sup., 394 S.W.2d 399 (decided April 12, 1965); Frieze v. West American Ins. Co., 8 Cir., 190 F.2d 381 [5]. Appellants claim that if the issue had been raised they could have shown that the transaction was entirely legal; that Owen was a real estate salesman associated with a licensed real estate broker, as hinted at by the words "D. B. W. Guy Blackstone Realty" in the upper left hand corner of Owen's letterheads, and that they could have established that in these dealings Owen was acting for a licensed broker in full compliance with Arizona law. The difficulty with this contention is that the documentation is damning: the correspondence, the written commission agreement, the note and deed of trust, show conclusively that Owen was acting as a principal, for himself, and not as a salesman for another. As indicated in Kirchner v. Farmers' Mut. Fire Ins. Co., Mo.App., 267 S.W.2d 390 [9–12], "an appellant should not be permitted to object to the affirmance of a judgment on any theory if as a matter of law the 'new' theory sustains the judgment appealed from." As in that case so in this, appellants could not profit by a new trial and we will not encourage litigation by remanding for a new trial where the litigant could not benefit. This is in accord with the provision of Civil Rule

83.13(c), V.A.M.R., that "Unless justice requires otherwise, the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears."

◼ Considering the "new" point raised by respondents on this appeal it is our duty to affirm the judgment. Generally matters bearing upon the execution and validity of a contract are determined by the law of the place where the contract is made. Nelson v. Browning, Mo.Sup., 391 S.W.2d 873 [10]; James v. Hiller, 85 Ariz. 40, 330 P.2d 999 [1]; Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 148 A.2d 176 [7]; 16 Am.Jur.2d Conflict of Laws § 39; 11 Am. Jur. Conflict of Laws § 167. As we have found, and as appellants concede and contend in their brief, the contract employing Owen was made in Arizona. That Owen was not licensed in Arizona as a broker, but was licensed only as a salesman, is clear. Under Arizona law it is unlawful for any person to engage in the business of a real estate broker without obtaining a broker's license.[4] A penalty is imposed for so acting without a license. It is a criminal offense.[5] A licensed real estate salesman can accept employment and compensation only from licensed brokers and inferentially cannot accept employment and compensation directly from owners and sellers of real estate.[6] Under such statutory provisions a real estate salesman, in order to practice his calling, must be associated either directly or indirectly with a real estate broker duly licensed as such, Gilbert v. Edwards, Mo.App., 276 S.W.2d 611 [10], "and must carry on his negotiations for the buying, selling, and leasing of real estate through his employer, the broker, who alone has the right to receive the commission from the clients or patrons, and, in the event it is not paid, to enter suit upon the contracts providing for the same. The salesman has neither the right nor capacity to enter into such contracts in his own behalf, * * *." Garvey v. Lagattuta, 15 La.App. 414, 132 So. 267, 269; Weber v. Tonini, 151 Cal.App. 2d 168, 311 P.2d 132.

◼ A review of Chapter 20, Title 32, Arizona R.S.A. indicates clearly that the

4. § 32–2122 provides: "It shall be unlawful for any person to engage in the business of a real estate broker or salesman without first obtaining a license as prescribed in this chapter and otherwise complying with the provisions of this chapter." Then follow provisions for applications for license, recommendations as to good moral character, past experience, etc., the qualifications of licensees, requirement of a bond, and other restrictions as to location of place of business, authority to do business only at the location set forth in the licenses, and a provision that a salesman's license "shall remain in possession of the employer until cancelled or until the licensee leaves his employ, when it shall be returned to the [real estate] commissioner by the broker for cancellation." A broker's license fee is $25; a salesman's license fee is $10. Provisions are made for suspension or revocation of licenses on specified grounds.

5. § 32–2154 provides that a person who acts as a broker or salesman or advertises in a manner which indicates that he is a broker, without being licensed, shall be punished by a fine or jail sentence or both.

6. § 32–2155 provides:
"A. A broker shall employ and pay only legally licensed salesmen, and salesmen shall accept employment and compensation as such only from legally licensed brokers.
"B. It is unlawful for a person, firm or corporation, whether obliger, escrow holder or otherwise, to pay or deliver to anyone compensation for performing any of the acts specified by this chapter, as a broker, who is not licensed at the time the service is rendered. An identification card or certificate of license issued by the state real estate department showing that the person, firm or corporation holds a license for the year in which the payment is made or earned shall be sufficient proof to relieve the obliger, escrow holder or other person from the penalty provided in this section.
"C. A person violating this section is guilty of a misdemeanor and shall be punished by a fine of one hundred and fifty dollars for each offense."

legislature intended it as a police regulation for the benefit and protection of the public and not merely as a revenue measure. In the majority of cases arising under police regulations of this nature the contracts of unlicensed brokers for services rendered have been held void and incapable of enforcement. Anno.—Unlicensed Broker, Compensation, 169 A.L.R. 767, II b., p. 769. Such rulings are reinforced where there are provisions such as § 32–2152, that in order to commence an action for compensation by a broker the complaint shall allege that plaintiff was a qualified licensed broker at the time the claim arose, and § 32–2155, making it unlawful and a criminal offense for any person to pay or compensate a broker for the performance of the specified acts, as a broker, who is not licensed at the time the service is rendered. "It goes almost without saying that under such an act a broker is without right to recover compensation for his services performed while he was unlicensed." 169 A.L.R. at p. 775.

■ Williston states the general rule that "Where a statute requires a broker to obtain a license before sales of the kind in question can be negotiated by him, there is no doubt that if such a sale is made by one acting as a broker without the required license, he can recover no compensation for his services." 6 Williston on Contracts, Rev.Ed., § 1765. And see 53 C.J.S. Licenses § 59, p. 711; 33 Am.Jur. Licenses § 70, p. 386; 17 C.J.S. Contracts § 202. Such a contract is void and unenforceable. Dow v. United States, 10 Cir., 154 F.2d 707, 710; Weber v. Tonini, 151 Cal.App.2d 168, 311 P.2d 132[3]; Byrne v. Peoples' Bond & Mortgage Co., U.S.D.C.Pa., 99 F.Supp. 195; Benham v. Heyde, 122 Colo. 233, 221 P.2d 1078; Horwitz v. Food Town, Inc., U.S. D.C.La., 241 F.Supp. 1; Levy v. Birnschein, 206 Wis. 486, 240 N.W. 140, 141; Moore v. Burdine, La.App., 174 So. 279; Copellman v. Rabinowitz, 208 Misc. 274, 143 N.Y.S.2d 496. The reason is that valid and enforceable contracts may not arise out

of transactions prohibited by the statutory law. Gilbert v. Edwards, Mo.App., 276 S. W.2d 611 [14]. "The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement." Garvin v. Gordon, 36 N.M. 304, 14 P.2d 264, 266 [3]. As stated in Mueller v. Burchfield, 359 Mo. 876, 224 S.W.2d 87, 1. c. 88, 13 A.L.R.2d 153: "The reason for denying relief to a person suing on a contract where a license is required and none is obtained is that the law will not aid such person in enforcing a contract which he had no right to make." The court quoted from McDearmott v. Sedgwick, 140 Mo. 172, 39 S.W. 776, in which it was said, 1. c. 778: "The principle is well settled that 'no court will lend its aid to a man who founds his cause of action upon an * * * illegal act.' This is a principle founded upon public policy, 'not for the sake of the defendant, but for the law's sake, and that only.'"

That Arizona follows the general rule is borne out by Hunt v. Douglas Lumber Co., 41 Ariz. 276, 17 P.2d 815, wherein the Supreme Court of that state said, 1. c. 819: "It is the general rule of law that where a statute expressly forbids a person from entering into a certain kind of contract until he performs some precedent act, and imposes a penalty upon such person for attempting to enter into the forbidden contract, the contract itself is absolutely void ab initio and the party penalized has no rights thereunder, and the other party to the contract, who was not required to perform any precedent act and who is not penalized by the statute, is not in pari delicto and may repudiate the agreement and stand on his rights as if no contract had ever been made."

■ We conclude that the employment contract between plaintiffs and Owen was void *ab initio* and that it and the note and deed of trust flowing from it are unenforceable under the Arizona law; that

plaintiffs are not *in pari delicto* and may use the Missouri courts to enjoin the threatened foreclosure.[7]

■ Appellants claim, however, that if the case is to be decided under Arizona law Owen nevertheless should prevail because it is undisputed that Owen was licensed as a real estate salesman in that state; that as such he is entitled to maintain his action directly in the courts by reason of the first sentence of § 32–2152, which provides: "An action for the collection of compensation earned may be maintained in the courts of the state by any broker or salesman." The section goes on to provide that "To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesman at the time the claim arose. Prior to hearing the action the court shall require the plaintiff to prove the alleged qualifications." Appellants misapprehend the force and effect of the first sentence of this section. Insofar as it extends to salesmen the right to maintain an action to recover compensation earned it applies only to actions against brokers. It enables salesmen to sue their employers if compensation earned by them in their capacity as a salesman is not paid. It does not entitle real estate salesmen to bring suit directly against customers for commissions claimed to have been earned by them in the capacity of a broker. To rule otherwise would render § 32–2155 nugatory.

What we have decided makes it unnecessary to explore the question whether plaintiffs were in default on the note and deed of trust when foreclosure proceedings were instituted.

7. In giving force and effect to the Arizona law—that is, by ruling the note and trust deed void and unenforceable in Missouri—we are not violating the public policy of the forum. Chapter 339, V.A.M.S. is a police regulation which differentiates between real estate brokers and salesmen in the same manner that the distinction is drawn by Arizona; which makes it unlawful to act as a real estate broker without a license, denies unlicensed persons the use of Missouri courts to recover compensation for services rendered in exchanging real estate without alleging and proving that the person was a licensed broker and authorizes suspension of a license of a real estate salesman if the licensee accepts a commission from any person except the broker with whom he is associated, for the performance of the acts of a broker.

Respondents' motion to dismiss the appeal is overruled and the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.